## METZGER *vs.* METZGER.

*In the matter of the Estate of* MORITZ METZGER, *deceased.*

IF the accounts of an executor or administrator be objected to, he must make due proof of every payment.

He may be allowed any item of expenditure, not exceeding twenty dollars, for which no voucher is produced, provided the payment, the time when, and the person to whom made, be supported by his oath. But such oath may be contradicted ; and items sustained in this way, should not be allowed in the aggregate exceeding five hundred dollars.

The disbursement of sums over twenty dollars must be verified by vouchers, or by other satisfactory evidence in lieu thereof.

If vouchers are produced, they are of themselves *prima facie* evidence of disbursements without any other proof, and should be admitted, unless impeached ; if lost, the accounting party should make oath to that fact, and state the contents and purport of the voucher.

When a claim is presented to the executor or administrator, he may require satisfactory vouchers, and the affidavit of the claimant in support thereof; but the want of such a verification is not sufficient ground for the rejection of a voucher on accounting before the Surrogate.

Objections to the accounts must be stated in the form of distinct and specific allegations, *surcharging* for omissions where the estate ought to have been credited, or *falsifying* for improper debits against the estate.

HENRY ALKER, *for Administratrix.*
ALEXANDER KURSHEEDT, *for next of kin.*

THE SURROGATE. The practice in the Ecclesiastical Courts in the accounting of an executor or administrator, has always permitted the legatees or next of kin to disprove or object to the account, although made upon oath. (4 *Burn's Ecc. L., p.* 487, 488 ; *Swinborne*, 860.) The administrator is bound to make due proof of every payment. In England, where the sum is under 40 shillings, the payment is proved by his own oath, if there is no evidence of fraud by dividing greater sums into less, and the aggregate of all the sums does not exceed £100. (*Robinson* vs. *Cum-*

*ming*, 2 *Atk.*, 410.) By our statute (2 *R. S.*, 3*d ed.*, *p.* 156, § 59), he may be allowed any item of expenditure, not exceeding twenty dollars, for which no voucher is produced, if such item be supported by his own oath positively to the fact of payment, specifying when and to whom such payment was made. But such oath may be contradicted, and allowances under this provision shall not, in the aggregate, exceed five hundred dollars for payments in behalf of any one estate.

By the English rule, the payment of sums of a higher amount than 40 shillings, must be verified by vouchers exhibited. (1 *Turner & Venab*, 360, 588; *Ridgeway* vs. *Darwin*, 7 *Vesey*, 404, 587.) The same provision is incorporated in our statute (§ 58, 2 *R. S.*, *Ibid.*), which directs that in rendering his account, the executor or administrator shall produce vouchers for all payments to be deposited with the Surrogate, and he may be examined on oath touching such payments, and also in regard to the effects of the deceased, and the disposition thereof.

The proper practice is to state the objections in the form of distinct and specific allegations, and give proof thereof. (*Williams on Executors*, 1784; *Younge* vs. *Skelton*, 3 *Haggard*, 784.) Such allegations may of course cover every possible ground of objection, such as a want of proper vouchers, or that payments have been made, or debts entered, which are not properly to be charged against the estate, or that fraudulent charges have been made, or that assets not included in the inventory have come into the hands of the administrator.

Where the affidavit annexed to the account is full and distinct as to the payments, and the items charged as disbursements under twenty dollars do not, taken together, exceed five hundred dollars, and the payments of sums over that amount are supported by vouchers, it is for the party who objects to the account to falsify or surcharge it. (*Kellett* vs. *Rathbun*, 4 *Paige*, 103; *Williams* vs. *Purdy*,

6 *Paige*, 166; *Gardner* vs. *Gardner*, 7 *Paige*, 114; *Wester-velt* vs. *Gregg*, 1 *Bar. Ch. R.*, 469.)

By Section 38, 2 *R. S.*, 3*d ed.*, *p.* 152, on any claim against the estate of a deceased person being presented to the executor or administrator, he may require satisfactory vouchers in support thereof, and also the affidavit of the claimant that such claim is justly due, that no payments have been made thereon, and there are no offsets against the same.

I have no doubt that the prudent and proper course for an administrator is, in all cases to require the affidavit of the claimant, as he is authorized to do by this section of the statute, if he seeks to be exonerated from having made improper payments, in case objections should subsequently be taken, on the settlement of his account, to the items so paid. (*Williams* vs. *Harden*, 1 *Bar. Ch. R.*, 301.) But this is entirely optional with him; the statute is not compulsory, nor was it designed to exclude as vouchers, receipts and claims which have not been thus verified. What are proper vouchers still remains for the Judge to decide, the same as before this provision was enacted. The executor is bound to produce his receipts to *vouch* his payments, and where any party in interest doubts the genuineness of the vouchers, he may proceed to impeach them. (*Bennett's Master's Prac.*, 21 *Law Lib.*, *N. S.*, *p.* 85; 1 *Turner & Venables*, 588.) It is of course incumbent upon the accounting party to prove all his payments, which he does as to sums under twenty dollars by his own oath, and as to sums over that amount, by vouchers therefor. (2 *Smith's Pr.*, 122). The account may be surcharged for *omissions* for which credit ought to have been given, or falsified for *wrong* debits, and the party contesting should state these grounds in specific objections.

Although it is said that the executor must be prepared to establish the propriety of his payments in case they are disputed, yet the burden of impeaching the payments is upon the party objecting. (2 *Smith's Pr.*, 128.) The ac-

count is rendered to the Surrogate, who is in place of the Ordinary, and who may, in a proper case, sustain the account even without vouchers. (*Higgins* vs. *Higgins*, 4 *Hagg.*, 242; 1 *Hoff. Ch. Pr.*, 525, 537; *Hoff. Master*, 81.) And when vouchers are produced, they are *prima facie* evidence of disbursements, and should be admitted in evidence, except the other side can lay a reasonable ground to show they can be impeached. If lost, the accounting party should make oath that such a voucher did theretofore exist, and state its contents and purport. In a case cited (2 *Fon. Exch. Pr.*, 239), the Master was directed to receive the vouchers in evidence, although the specific ground of objection to them was the want of proving the handwriting of the person who signed the vouchers or receipts. I take the correct practice, therefore, to be, that where vouchers are filed they become conclusive evidence of the payments, unless successfully attacked by the opposing party. I do not think that the want of an affidavit verifying the account, such as an administrator or executor has a right at his option to call for, under the section of the statute previously mentioned, is in itself sufficient ground or cause for the rejection of the voucher. It would be wise, however, in all cases, for the executor or administrator to insist upon his right to demand such an affidavit; but I do not think I have any right because he has failed to do so, to infer that the voucher is false, fraudulent, or manufactured, or that the debt paid was not due, without any affirmative evidence impeaching it.