WESTCHESTER COUNTY.—HON. OWEN T. COFFIN, SURROGATE.— MAY, 1877.

HITCHCOCK *v.* MARSHALL.

*In the matter of the final accounting of* STEPHEN S. MAR-
SHALL, *administrator, &c., of* JOHN HITCHCOCK,
*deceased, intestate.*

Under the provisions of the *Revised Statutes* (2 R. S., 95, §71) directing that
"upon the rendition and final settlement of the account of an execu-
tor or administrator, when it appears that any part of the estate re-
mains to be paid or distributed, the Surrogate shall make a decree
for the distribution thereof, among the * * * next of kin to the de-
ceased * * * and in such decree shall settle and determine all ques-
tions concerning any debt, claim, legacy, bequest, or distributive
share; to whom the same shall be payable; and the sum to be paid to
each person," the Surrogate has no jurisdiction to determine the rights
of two persons, each claiming a right to be paid as distributee by vir-
tue of an assignment or other transfer.
Nor can the Surrogate exercise this power even upon the request of both
the claimants.
The Surrogate cannot order payment of a distributive share to be made
to an assignee thereof, even when there is no objection thereto.

STEPHEN S. Marshall, the administrator of John Hitchcock, a deceased intestate, filed, on May 23d, 1873, his petition for a final settlement of his account, and a citation was duly issued and served accordingly, and on September 24th, 1873, his accounts were filed, by which it appeared that the distributive share of George Walker, one of the children of the deceased, amounted to $-71

47. A decree was accordingly proposed by the proctor for the administrator, by which the administrator was to pay the said sum of $671.47 to the said George Hitchcock, and also provided that he should pay the share of John Hitchcock, jr. to one Purdy, who claimed the same under a judgment against the said John Hitchcock, jr. obtained by the administrator and assigned to him.

This decree was not submitted to the Surrogate, and was not signed or entered by him, and the share of George Hitchcock was not paid to him by the administrator. On May 3d, 1877, one William Hitchcock applied to the Surrogate for an order directing the administrator to pay to him the share of George Hitchcock, claiming that he had received an assignment of it. In opposition to the motion, appeared the administrator, and also Frederick A. Hitchcock, who claimed that he was entitled to the share of George Hitchcock by proceedings under a judgment against him.

The said George Hitchcock also appeared, but made no claim to the share.

The administrator objected to paying the share to any one until the question of who was entitled thereto was determined. The claimant of the share thereupon applied to the Surrogate to take evidence and decide that question, and that the administrator be ordered to pay the money into the Surrogate's office, or deposit it in a trust company, to abide the event of that proceeding. The administrator objected to the proposed order.

G. G. MARSHALL, *in person.*

H. G. ATWATER, *for* WM. HITCHCOCK.

E. RITZEMA DEGROVE, *for* F. R. HITCHCOCK.

THE SURROGATE.—I think this court has no power to adjudicate the question as to which of the claimants, if either, is entitled to the distributive share of George

Hitchcock. I am further of opinion that it cannot properly recognise an assignee of a distributive share, legacy, or other interest in an estate, even where no question arises as to the validity of the assignment.

By section 57, 3 R. S. 178 (5th Ed.), it is provided that an executor or administrator may be required to account, by an order to be granted by the Surrogate, upon application from some person having a demand against the personal estate of the deceased, either " *as* *creditor, legatee or next of kin.*" An assignee of either is not *the* creditor, legatee, or next of kin, and hence the executor or administrator could not be required, by the Surrogate, to render an account on his application.

Section 66 provides that in a case where an executor or administrator has been cited to render an account, under section 57, he may apply for a citation, which the Surrogate shall issue, requiring "the creditors and next of kin of the deceased, and the legatees, if there be any," to appear and attend the settlement of his account. There is no provision here for citing the assignee of the persons mentioned.

It is also provided by section 69, that any creditor, legatee or other persons interested " as next of kin or otherwise," may attend and contest the account, &c. The word " otherwise " means simply the class of persons referred to in section 57.

Section 78 directs the Surrogate to make a decree for the distribution among the creditors, legatees, widow and next of kin to the deceased according to their respective rights ; and in such decree, he shall settle and determine all questions concerning any debt, claim, legacy, bequest or distributive share, to whom the same shall be payable and the sum to be paid to each person.

Section 82 provides for the distribution of the sur-

plus remaining after the payment of debts, &c., " to the widow, children or next of kin," in the manner indicated in a number of sub-divisions.

It will thus be seen that the general object of the chapter containing these sections is to insure the speedy administration of the estates of deceased persons, adequate facility for the enforcement of the rights of claimants, and suitable protection to executors and administrators against claimants of the estates of which they are representatives. It is these two classes of interest, the executors and administrators on the one hand, and creditors, legatees and next of kin on the other, with which the chapter is particularly concerned, and with reference to them its provisions are, in the main, to be expounded. The rights of claimants, *inter sese*, except in so far as the determination of those rights is necessary to the fixing of the rights of the two classes specified, are not within the general purview of the chapter, and contests between creditors, so far as they arise and are necessary to be disposed of in order that this protection may be given to the executor or administrator, must be disposed of, and such distribution will be conclusive upon the parties to them. (*Bank of Poughkeepsie* v. *Hasbrouck*, 2 *Seld.* 216.) For instance, in a case where the assets are insufficient to pay all of the debts against the estate, one creditor may dispute and cause to be reduced, or wholly rejected, the claim of another creditor in order that his *pro rata* share may be increased : and again, if there is a dispute as to the person of the legatee, or as to the persons who are entitled as distributees, whether widow or next of kin, or as to the amount due to each, the duty of the Surrogate is to determine the controversy, and to decide who are the proper persons to whom the legacy or distributive shares must be paid, and the sum to be paid to each,

under section 78. It is to controversies of this character, only, that the provisions of that section relate. If a Surrogate had power, under this section, to decree payment to an assignee, then clearly, he could determine the question as to which of two contending parties was the real assignee ; but this he cannot do, as appears by the *note* to the case hereafter cited.

The proposed New Revision of the Statutes, by § 2,743, provides for a distribution " to the creditors, legatees, next of kin, husband or wife of the decedent, *or their assigns.*" This language, if incorporated in above section 78, would enable the Surrogate, not only to direct payment to any of the persons named, but also to try any and all questions that might arise among them, affecting the distribution.

It is uttering a platitude to say that Surrogates' Courts are creatures of the statute, and can exercise no powers not conferred by its provisions, or by reasonable implication. I can find nothing in the enactments, on the subject, nor anything that may justly be inferred therefrom, authorizing me to take cognizance of the controversy in this matter. In all the cases enumerated by the statutes, the Surrogate must exercise his powers in the cases and *in the manner* prescribed by those statutes, (§ 1. 3 *R. S.* 362, 5th *Ed.*), and if he departs therefrom, and exercises powers for which he has no authority, or exercises them in a manner different from that prescribed by those statutes, his acts are void, (*Redf. Surrogate's Practice* 11, and cases cited.) If, therefore, he has no power to hear and determine a controversy between rival claimants as assignees of a distributive share, he could not enforce a decree, wherein he assumed authority to direct payment to be made to one of them, by attachment. It seems to me equally clear that he could not enforce payment to an assignee, where there is no controversy.

Here the rival claimants may each allege that the other's assignment was procured by fraud, and in such a case a trial by jury might be desired by one or the other, or both. For the enjoyment of such right this court has no power to provide. (See *note* to case of *Carpenter* v. *Keating*, 10 *Abb. Pr. N. S.* 223.)

It was, indeed, proposed by counsel that this court should appoint a referee to determine the controversy. The Surrogate of New York is the only officer of this kind with whom such a power is lodged, and he can only exercise it in a proper case.

It is needless for me to indica     what course should be pursued by the rival claimants. That they are not without remedy seems to me clear. It must suffice to say that I am decidedly of opinion that this court has no power to hear or determine the matter.

The decree prepared in 1873, modified so as to meet these views, and which directs the payment of George's share to him, must therefore be entered *nunc pro tunc.*

Decree accordingly.