WESTCHESTER COUNTY.—HON. OWEN T. COFFIN, SURROGATE.
January, 1879.

## STRONG *v.* STRONG.

*In the matter of the estate of* BENAJAH STRONG, *deceased.*

A decree of the Surrogate, made on a final accounting discharging an executor from liability for the payment of a legacy, and based upon a release signed by the legatee, may be opened by the Surrogate, upon reasonable ground being shown that the release was obtained by fraud.

While the question of such fraud may be passed upon by the Surrogate either at the accounting or after a decree had thereupon, petition to open the decree may be defeated by reason of laches on the part of the petitioner.

Where an executor obtained a release from a legatee by giving his personal note for the amount of the legacy, payable one year after date, representing that he had large means, when, as the legatee claimed, he knew he was insolvent, and a decree discharging him from liability for the legacy was entered a few days subsequently, and the legatee alleged that she discovered the facts in the case shortly thereafter, but she did not apply to have the decree set aside for nearly four years,—*Held* that she was precluded by her *laches* in making the application.

IN March, 1875, Edward Strong, the executor, rendered his account, and a decree was entered thereon, based in part upon the release, under seal, of Hannah Strong, a legatee, releasing and discharging the executor from all further liability on account of her legacy.

The consideration for this release was the individual promissory note of said Edward Strong for $5,000, payable one year after date, made and delivered to said Hannah a few days prior to the entry of the decree. A motion was made, nearly four years later, to open and set aside said decree in so far as it discharged the executor from liability for the legacy, on the ground of fraud perpetrated by him in procuring the release, it being charged that the executor, at the time of giving the note, falsely and fraudulently, and with intent to cheat and defraud the legatee, represented that he was a man of large property and abundantly able to meet said note at maturity, on the truth of which representations she relied, and was thereby induced to and did accept the note and execute the release, whereas, in truth and in fact, he was then insolvent and shortly thereafter went into bankruptcy; and the discovery of these facts was made by her shortly thereafter.

P. L. McCLELAN, *for petitioner.*

L. D. FREDRICKS, *for executor,* JOHN T. HOFFMAN, of counsel.

THE SURROGATE. — Section 1290, chap. 11, title 3, of the Code of 1877 provides that a motion to set aside a final judgment for error in fact not arising upon the trial, must be made within two years from the filing of the judgment roll. It is claimed that this provision is applicable to this court, but by the temporary act, (*Laws of* 1876, *ch.* 449, *subd.* 8, § 5), it is declared that said section 1290 applies only to the Supreme Court, a Superior City Court, the Marine Court of New York City and County Courts. By section 4 of the

temporary act (cited above), the word "judgment" is defined to mean a judgment in a civil action.    Hence that objection is not well taken.

I have no doubt as to the power of this court to set aside a decree based upon fraud and to try the question, on a motion made for that purpose, upon affidavits.

The facts disclosed indicate that the executor at the time he gave the note and represented himself to be a man of large property, must have known that he was insolvent.

Has the petitioner been guilty of such *laches* as to conclude her ?    The affidavit of her agent shows that he knew of the alleged fraud "very shortly after" the decree was entered.    This was in March, 1875, nearly four years before this application was made.    The Chancellor, in Rogers *v.* Rogers (1 *Paige*, 188), held that a delay, after knowledge of the fact, of a year and six months in applying to have a mistake made in drawing a decree, corrected, was too long, and the application was denied.    This case is referred to in Sipperly *v.* Baucus (24 *N. Y.*, 46), and approved.    In the latter case, however, where the application was not made until after more than four years had elapsed, there being no proof as to when the error was discovered, the court assumed that the application followed immediately on the discovery being made.    Hence the *laches* on the part of this petitioner, unexplained, would be fatal; but as I concur in the *dictum* in the case of Totten's Estate (*Tucker*, 115), that a satisfactory explanation of the *laches* may overcome the objection, I will permit a renewal of the application to

be made, on ten days' notice, on such additional
affidavits as may be offered, and will receive counter
affidavits; and if not so renewed, then the application
is denied. If renewed, I will entertain any other
questions which counsel may submit for consideration.

The application was renewed and heard on Feb-
ruary 14th, 1879, in pursuance of the leave granted,
on a supplemental petition and affidavits and opposing
affidavits, with a view to the determination of the
question of *laches*, and the whole case was permitted
to be discussed upon all questions involved. The
reasons assigned to excuse the *laches* were that the
petitioner was old, in feeble health and poor, and that
her agent in the matter made futile efforts to employ
counsel to take the necessary steps to bring the matter
before the court.

THE SURROGATE. — The points discussed and now to
be considered are : 1st, Had this court power to try the
question as to the validity of the release in the first
instance, if raised pending the accounting ? 2d, Has it
power to open a decree on the ground of fraud ? and,
3d, Is not the petitioner precluded from the relief
sought in consequence of *laches* in making the appli-
cation ?

The case of Wright *v.* Fleming (12 *Hun.*, 469), cited
in regard to the first question, arose upon demurrer to
a complaint. Of course, the facts stated in the com-
plaint were, for the purpose of the trial of the question
at law, taken to be true. Other facts existed which
could not be expected to appear in the report of the

case.   As the complaint was based upon proceedings had before me, it is proper to state, in order to limit the effect of the decision to the facts as they appeared to the Supreme Court, that the papers offered in evidence and rejected by me were not only releases, but also assignments of the shares of those by whom they were executed, of their interests in the estate, to the administrator.   Those assignors resided in distant states.   Affidavits made by them were presented, in which it was alleged the releases and assignments were obtained fraudulently.   I held that I had no power to try the question of their validity as assignments, and, therefore, declined to receive them (Hitchcock *v.* Marshall, 2 *Redf.*, 174); that if they were disregarded by me, and the decree entered accordingly, and the assignors were to take steps to recover the amounts decreed to be due to them, the administrator could plead them in bar, and an issue be thus raised and tried as to their validity, in a competent forum; that if, on the contrary, they were received and treated as valid by me, then those next-of-kin could commence an action to have them declared void, and that thus, in either event, the parties would not be without remedy.   The learned judge who delivered the opinion in Wright *v.* Fleming, (*above*) doubtless, did not stop to consider whether the Surrogate could pass upon the validity of these papers, as releases or assignments.   He was not fully informed of the facts as they occurred, and, therefore, on the mere allegation that the releases were properly authenticated to make them evidence, and that the proctors of those who executed them simply "disputed the effect, force and validity of them,"

he was justified in saying, "*upon the facts thus stated and admitted by the demurrer, it seems* clearly apparent that the Surrogate committed a palpable error by his decision to disregard the releases." Even this utterance was *obiter,* as the only question was, whether that court could interfere and direct the Surrogate how to decide, or restrain him from making such decision as to him might seem proper, and he held it could not. He did not discuss nor attempt to determine what questions the Surrogate had power to entertain and adjudicate.

Section 69, 3 R. S., 180 [5th ed.], (2 *R. S.*, 94, § 63), provides that any creditor, legatee or other person interested may attend and contest the account. Section 78 (2 *R. S.*, 95, § 71), directs the Surrogate to make a decree in which he shall settle and determine *all questions* concerning any debt, claim, legacy, bequest or distributive share, to whom the same shall be payable, and the sum to be paid to each person. Here is a duty imposed which cannot be evaded. The Surrogate must determine *all questions* arising in the course of the contest, in order that he may make the decree as directed. If a controversy arise as to how much of a legacy or distributive share a legatee or next-of-kin has received, he must take the evidence and determine the question. If a dispute spring up between the executor or administrator and a legatee or distributee as to an amount paid to a creditor, or as to whether one is a creditor, or whether a voucher is forged or has been obtained by fraud or duress, all must be investigated and decided by him. I do not regard these as powers incidental to the powers

granted by the sections quoted.  The power is direct and imperative.   The above are questions immediately involved in the accounting itself.  Of course, the statute is not so superfluous as to point out, regulate or define the grounds and manner of contesting the accounts, or to direct what evidence may or may not be received.   It declares that they may be contested and that the decree shall settle the controversies. Whether a voucher be a simple receipt, or a release under seal, can make no difference.   However solemn the instrument may be, it must, if questioned, and thus standing in the way of the adjustment of the accounts as directed by the statute, be grappled with and disposed of.   In no other way can the duty imposed by the statute be properly discharged.  If, therefore, the validity of such a release as exists here had been questioned during the progress of the accounting, I think it would have been a failure of duty on my part not to have settled the controversy.  (Metzger v. Metzger, 1 *Bradf.*, 265, and cases cited; Brick's Estate, 15 *Abb. Pr.*, 12.)

If this position be correct, then it seems to follow, that on being satisfied there was reasonable ground to suspect a fraud had been committed in procuring the release on which the decree was based, it would be competent and proper for this court, on a proper application, to so far open it as to permit an investigation in regard to that matter.   If the decree be opened for the purpose indicated, the question of fraud is not thereby decided, but it remains to be determined by such evidence as may be adduced.

The power of a Surrogate to " undo what has been

done through fraud," is asserted in the case of Brick's Estate, (*above*) on the authority of Watkin *v.* Brent, (1 *Curteis*, 264), *and Toller on Ex'rs.*, (p. 73, [2 *Am. Ed.*]) It is well settled by authority, that a decree taken by default, by which a party has suffered, may be opened — so where a mistake has been made, or an error committed. It strikes me if a decree can be opened where a simple error affecting injuriously the interests of a party, has been committed, the reason for doing it is much stronger where the injury results from the practice of actual fraud. In Brick's Estate, (*above*) the acting Surrogate was asked to set aside a decree on accounting, among other things, for fraud and collusion. He found the evidence of the fraud not sufficiently established, and denied the application, but without prejudice to a right to make a new application based upon further facts showing fraud or collusion on the part of the executor. Thus, authority and reason sustain the view that a decree may be opened on this ground.

Having thus reached the conclusion that this court possesses the power to determine whether a sealed release has been procured by fraud, and that it can also open a decree based upon such fraud, it would next be necessary to see whether the affidavits and counter affidavits, considered together, disclose a state of facts which would justify it in opening the decree for the purpose sought; but without, however, considering this point with much critical nicety, for the reason that the application must fail upon another ground, I am inclined to think the circumstances now disclosed do not show that a fraud was, in fact,

committed by the executor. It then remains to dispose of the question of the alleged *laches* on the part of the petitioner.

It is a wise and salutary provision of the law which permits time to draw a veil over the transactions of men; and equity, acting upon this benign principle, gives great effect to the lapse of time, and discourages claims not promptly made. This is more especially to be observed in regard to judgments and decrees which determine the rights and interests of parties, than in reference to those matters resting in contract, or affecting interests yet undetermined by judicial action. It is true, as contended by the learned counsel for the petitioner, that the courts have established no period of time within which an application of this character may be made, and beyond which it cannot be made. They treat the matter as a subject for the exercise of equitable discretion. Still they exact diligence of action in order that their judgments shall not come to be lightly regarded. In Rogers *v.* Rogers, (*above*), the Chancellor held that an application made a year and six months after knowledge of the fact, was too late. He did not fix any time within which it should have been made. Our Court of Appeals, as has been seen, approved of the *dictum* of the Chancellor, in Sipperly *v.* Baucus, (*above*). Of course these decisions cannot be disregarded. The case of Redmond *v.* Ely, (2 *Bradf.*, 175,) is strikingly similar to this in many of its features, although the question of fraud was not very strongly urged or considered; yet the Surrogate held that " to rescind the conclusion of a, cause, before or after

sentence, in order to fresh evidence being pleaded, requires proof that no *laches* was committed, and that the measure prayed is one essential to the ends of justice." The opportunity was afforded to the applicant to explain this *laches*, and she has, in my judgment, wholly failed in her effort to do so. The learned and distinguished counsel for the executor, has satisfactorily shown that the .neglect of the agent and of the counsel who were consulted on behalf of the petitioner, is no sufficient excuse. The delay of the agent is the delay of the principal. The supplemental petition and affidavit detail fully what was desired, but not accomplished. The age of the petitioner is certainly greater than it was four years ago, and her infirmities probably no less, and yet she has finally, notwithstanding the lapse of time and the decay of powers, succeeded in making this application. I regret the denial of this application the less because of what I regard as a well-founded impression that she would fail, were it granted, to establish the alleged fraud.

Motion denied.