New York County.—Hon. D. G. Rollins, Surrogate.—January, 1883.

Fraenznick v. Miller.

*In the matter of the judicial settlement of the account of the executors of* Adolph Brown, *deceased.*

Bauer v. Kastner.

*In the matter of the judicial settlement of the account of the administratrix of the estate of* Elizabeth Bauer, *deceased.*

The proper interpretation of the provisions of the Revised Statutes (R. S., part 2, ch. 6, tit. 3, § 71), respecting the Surrogate's jurisdiction to "settle and determine all questions concerning any debt, claim, legacy," etc., upon personal representatives' accounting,—declared.

Wright v. Fleming, 76 N. Y., 517, upon this question,—commented upon, at length.

By the limited grant of authority contained in Code Civ. Pro., § 2743, revising the provisions of the Revised Statutes upon the subject, and requiring the decree upon a judicial settlement of representatives' account to direct payment and distribution to persons entitled, and, where the validity of a debt, claim or distributive share *is not disputed or has been established,* to determine all questions concerning the same, it is intended that, whenever the executor or administrator *shall dispute* the validity of a debt, etc., the Surrogate's jurisdiction to adjudicate upon it is suspended, until a determination by another and a competent tribunal.

A dispute about the *validity* of a debt, claim or distributive share, payment of which is sought at an accounting, is, within the meaning of the same section, a dispute as to whether the right to such debt, claim or share at the time exists.

Accordingly, where one, as next of kin or legatee, claims, on an accounting, a share in a decedent's estate, and the accounting party disputes his claim, and interposes a release or an assignment by the claimant, who assails the same as invalid by reason of fraud, that section requires the Surrogate to hold in abeyance his decree of distribution, so far, at least, as concerns that interest to which the release or assignment refers, until the parties' rights can be determined in another forum.

Upon the judicial settlement of executors' account, objections having been interposed by a legatee, which the executors contended should be ignored, on the ground that objector had executed a release extinguishing her interest in the estate, and objector replying that the release was void for fraud in its procurement,—

*Held*, That the Surrogate had no jurisdiction to inquire into and determine the validity of the release in question.

Upon the judicial settlement of the account of an administratrix, objections having been interposed by decedent's husband, which the administratrix contended should be ignored on the ground that objector had executed to her an assignment of all his interest in his wife's estate, and objector replying that this assignment was procured by fraud,—

*Held*, That the Surrogate had no jurisdiction to inquire into and determine the validity of the assignment in question.

*Held*, further, that, notwithstanding its lack of jurisdiction, as above, the proceedings should not, on the one hand, be conducted to a final decree, as if the objections had not been filed, while, on the other hand, the court was not bound to postpone an investigation into the correctness of the accounts until an adjudication by a competent tribunal on the question of such validity; but such investigation should proceed, and objectors be allowed to take part therein, on interposing allegations of fact disputing the validity of the release or assignment, and averring that, but for such release or assignment, objector would be entitled to an interest or share in the estate.

The provision of Code Civ. Pro., § 2739, permitting the Surrogate, upon the judicial settlement of an executor's or administrator's account, to determine certain contests between the accounting party and any of the other parties, is too narrow to include the case of a dispute over the validity or effect of a release or an assignment from the latter to the former.

HEARINGS of objections upon the judicial settlement of personal representatives' accounts. The facts are fully stated in the opinion.

COLERIDGE A. HART, *for Augusta Fraenznick and Rosa Watteyne, objectors.*

SIGISMUND KAUFMANN, *for John F. Miller and others, executors.*

HENRY METZINGER, *for John Bauer, objector.*

RANDOLPH GUGGENHEIMER, *for Katharine Kastner, administratrix.*

THE SURROGATE.—The above entitled cases have been coupled, and will be considered together, though they neither concern the same parties nor relate to the same estate.

Indeed, the two proceedings differ somewhat from each other, in respect to the nature of the issue submitted for the determination of the court. Each involves, however, an important question as to the jurisdiction of the Surrogate, and as to the construction of a provision of the Code from which that jurisdiction, if it exists at all, is solely derivable. Brief statements of the facts of these cases will disclose the nature of the controversies.

## CASE NO. 1.

Brown's executors filed their accounts in October, 1880, and commenced proceedings before my predecessor for their judicial settlement. Two daughters of the testator, who were legatees under his will, interposed objections. This the executors insisted they had no right to do, because of the execution of certain releases, whereby their respective interests in the estate are claimed to have been absolutely extinguished.

The legatees denied the validity of these releases, on

the ground of alleged fraud in their procurement, and the Surrogate (after overruling the objection that he had no jurisdiction to inquire into and determine the matter), decided upon the facts, as then presented, that the releases should be upheld, and that their effect was to deprive the objectors of any right to contest the accuracy of the accounts filed by the executor.

The objectors subsequently applied to the present Surrogate for a reargument, and such reargument was permitted, for reasons stated in an opinion on file. The inquiry is now presented anew—whether these contestants can avail themselves of their objections, and, so far at least as relates to one of them, whether the Surrogate should inquire into and determine the validity of the release with which she is confronted.

## CASE NO. 2.

Katharine Kastner has filed her account as administratrix of the estate of Elizabeth Bauer. John Bauer, the husband of decedent, whose right to be a party to this proceeding is attacked for reasons which are foreign to the present inquiry, and which will be elsewhere considered, has heretofore assigned to the administratrix whatever interest he may have had in his wife's estate. He claims, however, that this assignment was procured by fraud; that the circumstances under which it was executed should be investigated by the Surrogate; and that, as a result of such investigation, it should be pronounced invalid.

The administratrix insists that the issue thus presented is not triable in this court; that the contestant's objec-

tions should be ignored, and that the estate should be distributed as if they never had been interposed.

Two questions are thus presented for my determination—

1st. Has the Surrogate jurisdiction to inquire into and pass upon the validity of the release and of the assignment in the above entitled proceedings ?

2d. If he is without jurisdiction, should the objections on file be entertained, or should they be disregarded?

### I. THE AUTHORITY OF THE SURROGATE UNDER THE PROVISIONS OF THE REVISED STATUTES.

Previously to the adoption of the present Code of Civil Procedure, the Surrogate derived from § 71, tit. 3, ch. 6, part 2 of the Revised Statutes (*3 Banks, 6th ed., 104*), whatever authority he possessed, in reference to the determination of—

(*a*) The validity and effect of releases and assignments by persons interested in estates; and,

(*b*) The validity of disputed claims of creditors.

The provisions of § 71 were as follows:

"Whenever an account shall be rendered and finally settled . . . if it shall appear to the Surrogate that any part of the estate remains to be paid or distributed, he shall make a decree for the payment and distribution of what shall so remain, to and among the creditors, legatees, widow and next of kin of the deceased, *according to their respective rights;* and in such decree *shall settle and determine all questions* concerning any debt, claim, legacy, bequest or distributive share; to whom the

same shall be payable, and the sum to be paid to each person."

This language was very comprehensive and was, doubtless, supposed to be plain and unequivocal, when it was adopted into the statutes. Its meaning, however, at once became the subject of spirited contention in the various courts of this State, and forms the topic of a multitude of reported decisions (Greene v. Day, *ante, 45*).

The Court of Appeals finally determined, in the case of Tucker v. Tucker (*4 Keyes, 136*), that, so far at least as concerned the matter of disputed claims of creditors, the Surrogate's court had no jurisdiction to adjudicate upon them. This doctrine has since been frequently reasserted, and is maintained in the very recent case of Glacius v. Fogel (*88 N. Y., 434*).

It is a doctrine which, as I have elsewhere stated, seems to me to demand such an interpretation of section 71 as is fairly summed up in these two propositions:

1st. The delegation to Surrogates of authority to decree, upon the final accounting of an executor or administrator, a distribution to claimants *according to their respective rights*, gave power to ascertain and determine the nature and extent of those rights, *only in cases where they were conceded to exist;* and,

2d. The imposition upon the Surrogate of the duty "to settle and determine *all questions* concerning any debt, claim, legacy, bequest or distributive share," empowered him to settle and determine such questions, and such only, as were not a matter of dispute between the parties, or, in simpler phrase, *such questions as there was no question about* (Greene v. Day, *supra*).

Nearly all the decisions, which I have condensed into

the two propositions just stated, relate to matters involving the demands of persons claiming to be creditors of a decedent's estate, but not conceded to be such by the executor or administrator.

Though not authoritative upon the precise questions here at issue, I am, nevertheless, at loss how to put any interpretation upon section 71 which would at once consist with those decisions, and sustain the right of this court to exercise such authority as is invoked in the present proceedings; and I should probably hold, without further inquiry, that I had no jurisdiction to pass upon the release and assignment which are respectively interposed in the cases at bar, but for certain recent decisions to which I feel bound to refer.

II. JUDICIAL DECISIONS IN RESPECT TO RELEASES.

In Strong v. Strong (*3 Redf.*, *480*), it was decided that, before the adoption of the Code, the Surrogate's court possessed the power to inquire into the validity of releases.

But the argument, by which that conclusion is supported, is substantially the same as that which was persistently but vainly urged in Tucker v. Tucker, and in a score of Supreme Court decisions relating to disputed claims.

It has been urged that the intimation of the Court of Appeals, in Harris v. Ely (*25 N. Y.*, *142*), should be regarded as authoritative in this matter. The question there at issue was whether an executor was properly required to account, at the instance of a legatee. This legatee, the widow of decedent, had, twelve years previously, given the executor a receipt in full of all demands *up to that date*, and had also executed a deed, conveying to him, as trustee for herself, all her personal estate.

The court held that the receipt was no bar to an accounting, as it did not profess to be an admission that the executor had fully administered the estate, and that the deed, which was in the nature of an ante-nuptial settlement, was not intended in any respect to discharge the executor, and did not in fact discharge him, from the liability of filing an account.

In pronouncing the opinion of the court, Judge Denio cited the case of Kenny v. Jackson (*1 Hagg. Eccl.*, *105*), wherein it was held that, though a residuary legatee had executed a release, whose validity was disputed and could not be determined in the Prerogative court, the executor should, nevertheless, at his instance, be required to account. Judge Denio made a passing comment, to the effect that the jurisdiction of our Surrogates' courts so exceeded that of the English ecclesiastical tribunals as to permit an adjudication upon the validity of releases interposed in bar of an accounting.

So far as I have discovered, from the time when the decision in Harris v. Ely was rendered (1862), it was never, for the succeeding sixteen years, referred to, in any cases included in the reports of this State.

In 1878, the Court of Appeals passed upon the appeal of Bevan v. Cooper (*72 N. Y.*, *317*). At the trial below, the then Surrogate of this county had adjudicated upon the question whether, under a will, certain legacies were or were not a charge upon the testator's real estate. In this, the Court of Appeals held that he had exceeded his authority. In discussing the general subject of the nature and extent of the Surrogate's jurisdiction, the court said: "There is an intimation, in Harris v. Ely, that a Surrogate, on an accounting, may try the validity

of a release, but the remark was *obiter*." So far as this allusion has any significance, it must be deemed, when read in the light of its context, as a disapproval of the *dictum* in Harris v. Ely. But it will be observed that the more recent intimation is itself *obiter*, and should not, therefore, be regarded as a final determination of the question.

By its decision in People *ex rel.* Wright v. Coffin (*7 Hun, 608*), the General Term of the Supreme Court, in the Second Department, seems to maintain the right of a Surrogate, before the repeal of section 71 of the Revised Statutes (*supra*), to exercise such authority as is here invoked by the contestants. An offshoot of the same litigation is the case of Wright v. Fleming (*12 Hun, 469*), wherein it is claimed that the General Term of the Supreme Court, in the First Department, took the same view of the Surrogate's jurisdiction. It does not seem to me, however, that the question here under consideration was intended to be passed upon in that case.

From the recital of facts which accompanies the opinion of the presiding justice, his statement that, under the circumstances there disclosed, "the Surrogate committed a palpable error by his decision to *disregard* the releases" which were the subject of that contention, by no means involves the notion that it was within the scope of the Surrogate's authority to receive and weigh the evidence for and against those releases, and then to decide upon their validity.

The allegations of the complaint were opposed only by a demurrer, and, for aught that appeared by the pleadings, the defendants had executed releases, against which there was no opposing evidence, but which, never-

theless, the Surrogate utterly disregarded. To say that this disposition of the matter was error was to say something which is not decisive of the present contention. Nor, on the other hand, does the language of the Court of Appeals, in its review of this decision, seem to me to mean what is claimed by the opposing counsel (See Wright v. Fleming, *76 N. Y., 517*).

It seems that, after the Surrogate had announced his purpose of "disregarding" the releases (though without an adjudication that they were invalid), he directed a distribution of the estate, as if they had never existed. Thereupon, the accounting administrator commenced an action in the Supreme Court, whereby he sought to enjoin the entry of any decree which should require him to pay, to the parties who had given the releases, large sums of money, to which, but for such releases, they would admittedly have been entitled, from the funds of the estate. The defendants in that action demurred. At Special Term, the demurrer was overruled, and judgment was rendered for the plaintiff. The General Term reversed this judgment on the merits, holding that an appeal was the proper remedy for the error into which, in its judgment, the Surrogate had fallen, and that the circumstances did not call for the intervention of a court of equity. The Court of Appeals, in a *per curiam* opinion, sustained the judgment of the General Term, but intimated that the injunction ought to have been granted, if the complaint had not been deficient in some of its allegations.

The court said: "The facts alleged, to sustain the prayer of the complaint for an injunction, are not sufficient. It alleges the giving of releases and assignments,

and that the Surrogate disregarded them, when presented to him in the proceedings in his court. It is not alleged that he had, or had not, the power to consider and pass upon them. . . . It is plain that there can be no final and complete settlement of the plaintiff's accounts . . until it is determined, by an authentic adjudication, whether the releases and assignments are valid, and what is the force and effect of them. It is, therefore, well that, if the plaintiff is so advised, he should amend his complaint, and make averments which will tender an issue upon the validity of the releases, and the effect of them, to relieve him from liability to the makers of them, and to vest in him their interest in the estate of his intestate, so that there may be such an adjudication. . . The proceedings before the Surrogate should not go forward, so far as that the releases, if upheld, will be of no avail to him. . . . The accounting may be had so far forth as that the balances for or against him may be ascertained, and all things be in readiness for the entry of a final decree. Hence he ought to have an injunction upon his complaint, if he shall amend it as above indicated, restraining the proceedings in the Surrogate's court, beyond the point mentioned above."

This is the full opinion of the Court of Appeals, so far as relates to the subject of the present inquiry. It seems to me that there is room for great divergence of opinion, as to the application of this decision to the facts of such a case as the present. It is certainly not squarely determined that, under the Revised Statutes, the Surrogate's court *had* jurisdiction, or *had not* jurisdiction, to inquire into the force and effect of releases whose validity had been assailed by the parties executing them.

It was urged, by the appellants in that action, that the remedy by injunction should be accorded because of the alleged misconduct and irregularity of the trial court in " disregarding " the releases there in question, after having admitted them in evidence.   A simple question of law, they said, would have been raised if the Surrogate had refused, for lack of jurisdiction, to permit the introduction of those instruments; and, on the other hand, if, after they had been admitted, evidence had been offered tending in anywise to impair their validity and effect, a question of fact would have arisen.   In either contingency, as they argued, error could have been effectually corrected by resort to the ordinary remedy of appeal. But they claimed that——

1st. The " disregard " of an  instrument which had been admitted in evidence, whose validity, force and effect had not been attacked by evidence in opposition, and which purported to be a " full, absolute and final release " of the defendant's claims; and

2d. The avowal of a purpose, on the part of the defendants, to enter a decree in harmony with this " disregarding," were circumstances which afforded sufficient grounds for the interference of a court of equity.

How far the Court of Appeals acted upon this view is not apparent from the language of its decision.   It is fairly open to dispute, whether its determination, that the plaintiff would be entitled to an injunction, upon making the suggested amendments in his complaint, was based upon the theory that the Surrogate had absolutely no jurisdiction in the premises, or merely upon the theory that his decision was erroneous, and that any decree, by which it should be made effective, would inflict upon the

plaintiff an injury, against which he should be permitted to interpose the shield of an injunction.

So, too, when the court says that the proceedings before the Surrogate ought to stop short of the entry of a final decree, it is by no means clear whether these remarks were intended to be limited to a class of cases wherein, as in the one then under review, the Surrogate had indicated his purpose of ignoring the effect of releases without adjudging them to be invalid, or whether, on the other hand, that language was designed to have a wider reach, and to declare that, until a controversy over the validity and effect of a release should be determined by another tribunal, the Surrogate ought, under no circumstances, to enter a decree of distribution, as to any portion of the estate to which such release appertained.

This case is, certainly, not decisive of the present contention, and, if the Code of Civil Procedure had made no substantial change in the statutes, I should feel bound to adhere, until otherwise advised by an appellate tribunal, to the position which seems to have the sanction of the Supreme Court in the Second Department, and which, in this very proceeding (Estate of Adolph Brown), was maintained by my predecessor.

This I should do with the greater confidence in view of the recent decision of the Court of Appeals in Riggs v. Cragg (*89 N. Y., 479*), a decision which certainly gives a more liberal interpretation to section 71 than it has hitherto received, and settles in the affirmative the much mooted question whether, upon a final accounting to which all persons interested were made parties, the Surrogate had power, under that section, to construe a will.

### III. As to Assignments.

Before examining the meaning of the Code provisions which have supplanted that section, it is proper to consider briefly the question, What authority is conferred upon the Surrogate to pass upon the validity of assignments made by persons interested in an estate? In Bonfanti v. Deguerre (*3 Bradf., 429*), the plaintiff legatee sought to procure from the defendant executor an accounting. The executor set up in answer that the plaintiff had executed to one W. assignments of his entire interest in the decedent's estate. The applicant alleged, in opposition, that the assignment was procured by misrepresentations, for which the executor was himself responsible. Surrogate Bradford refused to inquire into the validity of the assignment, but, as the only reason which he gave for his action was his lack of jurisdiction, because of the fact that the assignee was not a party to the proceedings, the case is of little utility.

Hitchcock v. Marshall (*2 Redf., 174*) is, however, directly in point. Surrogate Coffin there held that, even where no question arose as to the validity of an assignment executed by a person entitled to a distributive share, he did not feel authorized, under the law as it stood before the enactment of the Code, to recognize such an assignment and to direct distribution accordingly. This view he reasserted in Haskin v. Teller (*3 Redf., 321*), and in Strong v. Strong (*Id., 481*), and in Leviness v. Cassebeer (*Id , 491*).

I am informed that, in New York county, it has been for years the practice of this court to recognize and give effect to assignments when they have not been attacked,

but that, whenever their validity has been the subject of controversy, the court has refused to exercise any jurisdiction concerning them.

## IV. THE SURROGATE'S AUTHORITY UNDER THE CODE PROVISIONS.

We are now brought to the consideration of the question to what extent, if at all, the authority of the Surrogate has been affected by the substitution of the existing law, in place of the repealed provisions of the Revised Statutes.

It has been necessary to examine those repealed provisions and the decisions to which they have given rise, because the section of the Code which will presently be quoted, and which is now the sole source of the Surrogate's authority in these matters, was designed to bring the very letter of the new law into exact conformity with the interpretation which the courts had put upon the language of the old, and thus to prevent, in the future, all doubts and disputation as to its meaning. Such is declared by Mr. Commissioner Throop (see note to § 2743 of his edition of the Code) to have been the aim of the commissioners, in changing the phraseology of the statute. The new provision is as follows:

"Where an account is judicially settled, . . . and any part of the estate remains, and is ready to be distributed to the creditors, legatees, next of kin, husband or wife of the decedent, or their assigns, the decree must direct the payment and distribution thereof to the persons so entitled according to their respective rights. .

. . Where the validity of a debt, claim or distribu-

tive share is not disputed or has been established, the decree must determine to whom it is payable, the sum to be paid by reason thereof, and all other questions concerning the same" (Code, § 2743).

I do not share the confidence of the commissioners, that these provisions have been so skillfully worded as to leave no room for future contention. But my own interpretation of them, and of their application to the cases now before the court, is as follows:

First. By this limited grant of authority to determine all questions concerning "debts, claims and distributive shares," when their validity "is *not disputed* or has been established," it is intended that whenever the executor or administrator *shall dispute* the validity of a debt, claim or right to a distributive share, the jurisdiction of the Surrogate to adjudicate upon it is straightway suspended until such debt, claim or right shall have been established by the judgment of some competent tribunal, and of some tribunal, of course, other than the Surrogate's court itself.

Second. The term "debt, claim or distributive share," as used in section 2743, is designed to comprehend every species of claim or demand against a decedent's estate, which may be or can be preferred by any individual belonging to any of the classes of persons previously enumerated in that section, *i. e.*, by any creditor, or legatee, or next of kin, or husband, or wife of decedent, or by the assignee of any one of such persons. Indeed, the word "debt," of itself, must be deemed to have a significance almost as broad as this, if we are to heed its definition in section 2514. "The word debts," says that section, "includes every claim and demand, upon which a judgment

for a sum of money, or directing the payment of money, could be recovered in an action."

Third. That a dispute about the *validity* of any such debt, claim or distributive share, whose payment is sought to be obtained or secured at a final accounting, is a dispute about whether the right to such debt, claim or distributive share, at the time, exists.

Fourth. That, accordingly, whenever one, as next of kin or legatee, claims, upon a final accounting, a share in the decedent's estate, and the accounting party disputes his claim, and interposes against it a release or an assignment, which is assailed by its maker as invalid and ineffectual by reason of fraud, a contingency has arisen which requires the Surrogate, in obedience to section 2743, to hold in abeyance his decree of distribution, so far, at least, as concerns that interest in the estate to which such assignment or release relates, until the rights of the parties can be determined in another forum.

If the provisions of the Revised Statutes were still in force, it might be claimed, with some show of reason, that the Surrogate's right to determine a controversy, between an accounting executor or administrator and a person claiming as legatee or next of kin, touching the validity and effect of a release or an assignment *to the accounting party himself*, might be defended as within the spirit, if not the letter, of recent decisions of the Court of Appeals. See, for example, the cases of Kyle v. Kyle (*67 N. Y., 408*); Shakespeare v. Markham (*72 N. Y., 400*); Boughton v. Flint (*74 N. Y., 476*); which lend some support to the notion that whatever claims of interest in an estate its executor or administrator sets up may be passed upon by the Surrogate.

But section 2739 of the Code seems to have established certain restrictions in this regard which are too plain to be overlooked. It provides that a contest between the accounting party and any other party in interest may be determined by the Surrogate, when it relates to a debt alleged to be due by such accounting party to the decedent, or by the decedent to the accounting party, or when it relates to property of the estate to which the latter lays claim. The provision is manifestly too narrow to include such cases as the present.

V. SHALL THE CONTESTANTS' OBJECTIONS BE CONSIDERED ?

Having no power to pass upon the validity of either the release in the Brown estate, or the assignment in the estate of Bauer, what disposal ought I to make of the objections which have in each case been interposed ? It is insisted by the accounting parties that the claims of the objectors to appear as such should be denied, and that the proceedings should be conducted to a final decree, as if their objections had not been filed. But would not such a course imply an assumption that the instruments whose validity is attacked are in fact valid ? In other words, would it not practically involve just such a determination of their validity as the court has no right to make ?

It seems to me that one or the other of two courses should be taken for protecting the rights of all parties in such controversies as these. Either the inquiry into the correctness of the accounts should be postponed, until an adjudication is had, in the matter as to which the court lacks jurisdiction, or, if the inquiry is suffered to pro-

ceed, every person who claims a share or an interest in the estate should be allowed to take part therein, despite the fact that he is alleged to have assigned or released such share or interest, provided that he interposes allegations of fact disputing the validity of such assignment or release, and that, but for such assignment or release, he would be entitled to such interest or share (Thomson v. Thomson, *1 Bradf., 24;* Burwell v. Shaw, *2 Bradf., 322;* Dickson's Estate, *11 Philadelphia, 86;* Wistar's Estate, *12 Philadelphia, 48;* Kenny v. Jackson, *1 Hagg. Eccl., 105;* Greene v. Day, *ante, 45;* Giles v. de Talleyrand, *ante, 97;* Buchan v. Rintoul, *70 N. Y., 1*).

Which of these two courses should be pursued, in any given case, must depend upon a variety of circumstances that need not be here considered or enumerated. In both of the present proceedings, I have decided to permit the contests to go on at once.

Orders may, therefore, be presented for submission, to a reference, of the accounts and of the objections thereto.