# CASES ADJUDGED

IN THE

# SUPREME COURT

OF THE

# STATE OF NEW YORK.

---

CHARLES B. GILMAN, Appellant, *v.* GEORGE F. GILMAN and EDWARD McCLELLAN, Executors, &c., WINTHROP W. GILMAN and others, legatees, &c., of NATHANIEL GILMAN, deceased, Respondents.

ANNA K. GILMAN, Appellant, *v.* THE SAME, Respondents.

(GENERAL TERM, FIRST DISTRICT, JANUARY 1870.)

Executors directed by the testator to invest in United States government stocks, State, city or town securities, or upon bonds and mortgages, whatever funds they might from time to time have in hand, awaiting the period for disbursement according to the provisions of the will, invested small sums, but retained in hand large average balances for several years, holding them on deposit to their individual credit, and in their names as executors, and in different banks, shifting the deposits from one bank to another, and in part, using the same for accommodation of one or more of their number.

*Held,* they were chargeable with interest on the balances, after allowance of reasonable time for investment, and were not excused from its payment, because of objection by some of the distributees to investments in United States securities; or of difficulty in obtaining investment in bond and mortgage, or of any right to keep the moneys in readiness to pay over to the parties entitled, pending proceedings for distribution, and notwithstanding the legatees, &c., had not informed the executors of any opportunity to invest in proper securities.

Gilman *v.* Gilman.

Accordingly, they were charged with interest at six per cent, on the sums held by them at the end of every half year, after allowing thirty days to make investments.

And, Per INGRAHAM, J., had the executors invested in the securities designated by the will for the purpose, though against objection by the legatees, &c., and although they might have invested in other unobjectionable securities, they would not necessarily have rendered themselves liable for loss resulting therefrom.

It not appearing that the executors had derived any other personal benefit from the funds of the estate than that which might have arisen incidentally to their credit from moneys deposited in bank, and they having credited the estate with interest on all moneys used by them.—*Held*, they were not chargeable with compound interest.

Evidence being given that testator had agreed with M., one of his executors, to support him if he would attend to his (testator's) business, and of testator's saying he had promised M. to pay him sufficient for his own and family expenses, and of his expressing himself a short time before death, as satisfied with M.'s attention to the business.—*Held*, M.'s claim for compensation was properly allowed as a payment to him by the executors.

But the executors were not entitled to charge the estate with the expenses of their unsuccessful resistance to an application for an order requiring them to account, nor of their defense in proceedings for contempt for neglecting to account.

A note of one of the executors given testator in his lifetime, having been charged to him in their accounts.—*Held*, the charge was proper, notwithstanding judgment had been recovered on the note in Maine.

APPEALS from a decree of the surrogate of New York, made on the accounting of the executors of the will of Nathaniel Gilman, deceased.

Letters testamentary were issued on the 24th May, 1861, the account was filed in October, 1864, was referred to an auditor, who, on the 30th January, 1867, made his report. The decree of the surrogate affirmed this report, with a few modifications.

The testator's will directed the executors to invest a certain sum for the benefit of his wife, receiving and paying to her, during life, the income, and after her decease, to pay the principal in different shares to his children, on their severally attaining the age of twenty-five years, and their respective portions of the income annually, till such events, with a provision for the vesting of the shares of deceased children in the

survivors. It contained various similar provisions for the payment, at different times, of certain principal sums to his children, viz.: On their attaining the ages of twenty-one or twenty-five years, and after some specific and general legacies, gave the rest, &c., being the great bulk of the estate, to his children ; and at the age of twenty-one years, to the representatives of deceased children, *per stirpes.*

It appeared that in 1861, soon after the commencement of the war, the executors had invested funds of the estate in considerable amounts in government bonds, and that some of the parties interested were dissatisfied, and seemed to be much disturbed at those investments, professing to believe that the government securities would depreciate in value ; that bonds and mortgages were to be had at low rates of interest, by paying brokerage to obtain them ; and that about this time one of the executors, who was engaged in business, and could obtain a discount of six per cent for cash payments for his purchases, at the suggestion of his co-executor, applied the funds of the estate to payments for his goods, less the discount, and afterward, when the credit would have expired, repayed the estate in full. He also purchased his own notes (which were good) for the estate at a discount, and obtained a loan to himself upon the security of his own bond and mortgage.

Other facts will appear from the opinion.

*Charles E. Whitehead, Douglas Campbell* and *W. B. Aitkin,* for the several appellants.

*Charles H. Glover,* for W.W. Gilman and other respondents.

*Fullerton & Knox* and *Ira Shafer,* for the executors.

Present—INGRAHAM, BARNARD and BRADY, JJ.

By the Court—INGRAHAM, P. J. On the accounting before the surrogate, various objections were taken by different parties to the report of the auditor, and from the decisions of the surrogate thereon, appeals are taken.

I propose, in the examination of the case, to notice the various objections taken and made the subject of appeal, without separating them into different appeals.

1st. The principal ground of appeal in which two or more of the appellants agree, is to the refusal to charge the executors with interest on the moneys received by them, and kept on deposit in banks.

These moneys were received from the beginning of 1861, and large balances remained in their hands from that date, down to the time of the accounting. The report of the auditor was made in January, 1867.

The auditor reports the whole amount received by the executors up to 1st May, 1866, to have been the sum of $296,304, and the amount paid out for debts and expenses, $26,741$\frac{47}{100}$, and for legacies, &c., $18,500. This would leave a surplus received by them of $251,062$\frac{53}{100}$. Of this, they have had on hand, uninvested, large sums, varying from $28,000 in 1861, to $119,000 subsequently.

By the will, the executors were directed " to invest ir stocks of the United States or of a State, or of a city, or in town securities, or bond and mortgage, whatever funds may, from time to time, be lying in their hands, awaiting the periods at which, according to the provisions of the will, such funds were to be disbursed to the children or grandchildren of the testator."

This provision of the will was utterly disregarded by the executors. Small sums only were so invested, while these large balances were retained in bank. Two bank accounts were kept, and moneys were transferred from one bank to the other, and sometimes transferred back again.

The excuse for not investing, given by the executors, is: 1. That some of the parties interested objected to investments in United States bonds in 1861; 2. The difficulty of investing in bond and mortgage, and 3. That they kept the moneys in such a condition that the same could, at any time, be paid over to the persons entitled thereto.

Gilman *v.* Gilman.

None of the reasons justify the executors in disobeying the directions of the testator. If the United States securities were considered objectionable, and if it was difficult to loan on bond and mortgage, there were other securities of States or cities, which were not subject to the same objection, and it was their duty to invest these moneys until they were wanted for payment of the legatees. No authority was given to retain such moneys uninvested for the purpose of distribution, and the only discretion vested in them was as to the security in which the investment was to be made. Instead of following these directions they appear to have used the funds, from time to time, or part of them for the accommodation of one or more of their own number, either by buying the notes or discounting the notes of one of the executors, or paying cash for goods purchased by him in his business, to be repaid by him at the expiration of the ordinary credit, and in one instance loaning to said executor money on bond and mortgage. No such transactions are within the power, nor are they consistent with the duty of an executor, and if any loss had occurred therefrom, such loss would have been chargeable personally on the executors consenting to such use of the funds of the estate. Where the will directs the specific securities in which the moneys are to be invested, the rule which requires adult legatees to bring to the knowledge of the executors the securities in which they desire such investments to be made is inapplicable. Whatever doubt may have existed as to United States securities in 1861, was long ago removed, and furnished no reason for the neglect to invest in such securities after 1863. Instead of this, the funds were kept in different ways; some in the iron chest for months; some deposited to the credit of the executors, as such, and some deposited to their credit as private persons. There can be no doubt that, for such disobedience of the plain directions of the will, and for such appropriation of the moneys of the estate to private purposes, of one or more of the executors, they have made themselves liable to be charged interest on the moneys so retained by them uninvested, after

the allowance of a reasonable time for the purpose of making such investment.

Where the investment is to be made in public securities which can at all times be obtained in the market, thirty days is a reasonable time to require such investment to be made.

In taking account of such interest, a reasonable number of rests only should be made in the accounts, not holding the executors to invest every sum as soon as received by them. Such reasonable time would be not longer than six months, and that time would give the executors everything they could reasonably ask for in making the investments. Upon this branch of the case the executors must be charged with interest on the sums held by them at the end of every six months from 1st May, 1861, not invested, after allowing thirty days for making such investment.' (*Scheifflin* v. *Stewart*, 1 John. Ch. 620; *Garrett* v. *Carr*, 3 Leigh, 407; *Lansing* v. *Lansing*, 45 Barb., 190; *King* v. *Talbott*, 50 Barb., 453.)

The excuse for not investing, viz.: That some of the legatees objected to investing in the securities of the United States, has no force. The testator had a right to direct as to the investment of these funds, and having done so in his will, the executors were bound to follow his directions. If they had done so, they would have been protected even if a loss had occurred, or they could have invested in other securities, to which there was no objection.

Under any view of this question, it seems clear that the executors have been guilty of neglect and disobedience of the provisions of the will, and that they are chargeable with interest as before stated.

It is urged that the executors are chargeable with compound interest.

If it appeared that they had neglected to give credit for the interest on the moneys used by them, or either of them, there would be no doubt of the rule, and its application to the present case. Here they appear to have credited the estate with interest on all moneys so used, leaving the

Gilman *v.* Gilman.

liability to be only for moneys left uninvested in the bank, and, so far as the evidence goes, not showing any benefit derived therefrom by the executors, unless it was from a credit which such deposits might incidentally give them in their individual business.

2d. The next ground of appeal is, that Edward McClellan should be charged with certain notes collected by him.

I do not think the evidence warrants any interference with the findings in this respect. The question was a matter of fact solely, depending, in some measure, on contradictory testimony, and the evidence sustains the decision.

3d. The objection to the allowance to Edward McClellan, for services rendered the testator, is also not well taken. There is evidence that the testator had agreed to support McClellan and his family, if he would attend to his business; and, that the testator said he had promised to pay McClellan enough to pay his expenses and those of his family; and, a short time before his death, that he expressed himself satisfied with McClellan's attention to his business. There is no reason for an interference with this allowance.

4th. An objection is made to the allowance to the counsel for executors of their charges for services. So far as they had been paid, they were properly before the surrogate on the accounting. By his decree he has disallowed so much of them as relates to the proceedings in Maine.

The only item which is objectionable, is that allowing the executors to charge the estate, with the expenses of their opposition to an order for accounting, and with the defense of the executors after they were in contempt for not obeying the order of the surrogate to account. This charge is made at $150, and should be disallowed, and the executors charged with that amount.

5th. The item of $956 received by the executors is stated in the inventory, and remains charged against them as part of the estate, and they are there charged with it. It would be unnecessary to repeat it until the final accounting takes place.

6th. The remaining objection is to the charge against George F. Gilman, of his note for $12,626.54, held by the testator at the time of his death.

It is objected by Charles B. Gilman that this note should not be charged against the executor here, because the note has been transferred in Maine to the widow, after having been sued to judgment in Maine, where the widow is now prosecuting it to collection.

The mere recovery of the judgment in Maine is no ground for omitting to charge the executor with the amount of his indebtedness. There is no sufficient proof of the transfer of the note or judgment to the widow, or any other person, to prevent such charge here. There may be a conflict between the courts here and in Maine. That must be disposed of in the decision of the actions pending between the parties. As the bulk of the estate and the place of administration is here, it is proper that the accounting should be here. Had the executor paid the money in Maine, it might have constituted a good objection to the charge here ; but, as no such proof is given, I do not see any ground for reversing the decision on this point.

The decree of the surrogate must be modified in the mode before stated, and the case referred back to the surrogate, with instructions to charge interest on the balances kept by them without investment, making rests every six months, and allowing thereafter thirty days for such investment, at the rate of six per cent, also to disallow the charge for opposing the accounting, and charging the executors with the amount allowed therefor, $150.

Ordered accordingly.