The defendant company was dissolved upon the ground of its insolvency, in an action brought by the attorney-general, and a receiver appointed of its property and assets, for the purpose of closing up its affairs. At some time after the entry of judgment of dissolution the petitioner and certain other of the policy-holders intervened, and became in some manner parties to the litigation. We do not know and are not informed when or how, but, for the purposes of the present motion, should perhaps treat them as having become in some regular manner parties to the action. The policy-holders who thus introduced themselves into the litigation were represented in separate groups or detachments by at least four different attorneys. None of these policy-holders were necessary parties *Page 60 
to the suit. It might have run its course and ended in a final distribution without the presence of any of them, and each was admitted as a party because he had his own individual and personal interest in the assets to be distributed, and solely that he might represent and protect that personal interest in the further proceedings. Others of the policy-holders did not intervene, and were contented to allow their interests to be represented and protected by the attorney-general and the receiver appointed by the court. The moving papers do not show that the intervenors, through their counsel, did any thing whatever to affect the action of the court until the receiver presented his account and asked for a settlement and discharge. Up to that point of time we must assume that they stood only in the attitude of interested observers. But upon the presentation of the account they claim to have become active and useful. They filed exceptions which were, in the main, aimed to reduce the receiver's compensation. They claim that the attorney-general filed none and made default. Possibly that was so because the intervenors had voluntarily raised all necessary questions, and put them before the court, and his repetition of them was not requisite to the result. However that may be, the objections were heard and resulted in an order which reduced the commissions of the receiver very seriously, and compelled him to a rehearing before the superintendent of insurance as to the rate to be allowed. Quite an amount was thus saved to the policy-holders in the sense that it was not required to be paid to the receiver. Nothing was added to the fund in the hands of the court. An improper payment out of it was prevented. This result benefited the respective intervenors. It made the share of each in the ultimate disposition of the fund larger than it might otherwise have been, and in this respect the other policy-holders were proportionally benefited. One of the intervening attorneys subsequently presented a petition to the Special Term in behalf of one hundred and forty policy-holders whom he claims to have represented, asking to be paid out of the funds in the hands of the receiver disbursements or expenses to the amount of $169, and a counsel fee of $500. The Special Term *Page 61 
denied the motion for want of power to grant it; the General Term affirmed that denial, and the question is brought here on appeal.
It comes before us purely as a question of power. If, upon the facts presented, the court had legal authority to grant the allowance, we must reverse the orders appealed from. It should also be observed that the application is not for costs as between party and party. These are regulated by the Code; their amount fixed, except as to extra allowances; and the latter prescribed and kept within fixed limits. As to these, courts of equity have a discretion to allow them or not, and to determine who shall pay and to whom, but there their discretion ends, except as to the extra allowance permitted in certain cases. In respect to these taxable costs between party and party the power of the court was long since exhausted as regards the present litigation, and no such question remains. The allowance which the petitioners seek is of a different character and entirely outside of the Code, and what is often described as costs between solicitor and client.
The most familiar illustrations of that sort of allowance are found in cases where suits are brought and defended by trustees, or persons acting en autre droit. The principle upon which counsel fees are granted in such instances is that of a necessary disbursement, and it stands upon the same ground as any other necessary expense of the preservation of the fund. Often and usually the trustee has no interest, outside of the performance of duty. What he does is for the benefit of others whose interests are for the time being in his keeping. He owes them no duty to expend his own money for their benefit, and whatever he does so expend in the reasonable and prudent care of the trust fund is properly allowed to him as an expense. Counsel fees thus incurred to an extent approved by the court may, therefore, be allowed him, and if fixed in advance of his actual payment, they are none the less the necessary expenses of his trust. (Downing
v. Marshall, 37 N.Y. 387; Irving v. DeKay, 9 Paige, 533;Wetmore, Ex'r, v. Parker, 52 N.Y. 450.) The allowance claimed in the present case is sought to *Page 62 
be defended on this principle, but the facts do not justify the contention. The intervening parties are termed quasi trustees, charged with a duty to protect the general interest, but nothing could be further from the truth. As parties to the action they represented nobody but themselves, and owed no duty to anybody else. If their interests came in collision with those of other policy-holders they fought for their own, as they had a right to do. They came in as individuals to guard their own personal rights. No one in any manner authorized them to speak for or act for any person but themselves, and they cannot become volunteer trustees for those who never asked or requested their interference. They had no fund in their hands for the preservation of which they were responsible. Their sole effort and aim was to get as much of it for themselves as possible, and if, in that effort, others were benefited, they cannot claim to be trustees for such others so as to get still more of the fund for themselves. The receiver was the trustee to whom the allowance was due and was made, and the intervenors were simply individual parties protecting their own personal interests.
Much the largest proportion of the cases cited on behalf of the appellants fall within the principle of allowances to trustees. Many of them respect counsel fees awarded to executors, administrators and guardians; to assignees and committees of lunatics; and lately we have further applied the principle to the case of a corporation defending itself and the funds intrusted to its care against an attack upon its corporate life made at the suit of the attorney-general. (Barnes v. Newcomb, 89 N.Y. 108. ) Its defense was the defense of a trustee, seeking in good faith to regain possession of its trust funds, and preserve its corporate life for the performance of its trust duties.
But we are referred to another class of cases which have lately come under consideration in the Federal courts. (Trustees of theInternal Improvement Fund of Florida v. Greenough, Alb. Law Journ., vol. 25, p. 492.) These are cases in which one of several persons interested in a common fund *Page 63 
brings an action in his own name, but for the benefit also of such others as may choose to come in and avail themselves of the litigation, for the purpose of reclaiming the fund and subjecting it to the control of the court. The case cited was one in which trustees had improperly diverted and transferred the trust estate and failed to appropriate it to the purposes of the trust, and the plaintiff filed a bill not only in his own behalf but also in behalf of all others interested, and succeeded in reclaiming the trust estate and placing it within the control of the court through the agency of a receiver. The illustrations cited as authority and as analogous were proceedings for restoring property to the uses of a charity which had been unjustly diverted: (Att'y-General v. Brewers Co., 1 P. Wms. 376;Att'y-General v. Kerr, 4 Beav. 297) creditor's suits where a fund has been realized by the diligence of the plaintiff: (Stanton v. Hatfield, 1 Keen, 358; Thompson v. Cooper, 2 Coll. 87; Sutton v. Doggett, 3 Beav. 9), and petitions in bankruptcy where assets are recovered for the common benefit of creditors who come in and prove their claims. (Worrall v.Harford, 8 Ves. 4.) We need not consider how far these adjudications of the Federal, and of the English courts would be followed by us in similar cases. Assuming them to rest upon a distinct equity and upon sound principles, it is enough that the case before us does not fall within their range and scope. In many respects they seem to be nearly related to the cases in which expenses are allowed to trustees, and possibly might prove to be an outgrowth of the same general principle. The suitor proceeds not only in fact but in form in behalf of and as trustee for others who may come in. If they do so, they recognize his agency, and voluntarily avail themselves of his offer. But the petitioners here stand in no such attitude. They have brought no suit; they have recovered no fund; they have defended in their own behalf, not even offering or proposing to defend for others; and nobody has become a party on the faith of their action. Those upon whom they seek to levy tribute were already represented in the action by the receiver and the attorney-general. To the expenses of the *Page 64 
former they were bound to contribute, and came under no obligation to attorneys whom they did not employ, and to whose services they never assented.
But a broader proposition is finally advanced, and the existence of a third class of cases is asserted. It is said that "in an action or special proceeding for the administration of a fund in the hands of the court, where a judicial apportionment or determination of rights is necessary for this purpose, the costs, counsel fees, and expenses of all necessary parties are a lien and charge upon the fund; not as legal costs taxable under the Code, or allowances in the discretion of the court under the Code, but as necessary expenses or just allowances prior to and as a necessary expense of distribution." Stripped of its verbiage, this doctrine is that because the court has control of a fund brought to it for distribution it may give it away as it pleases. If it means that, the power of the court would indeed reach the case of these petitioners, but it would make the judge in equity an arbitrary tyrant, and none the less so because the tyranny disguised itself in a judicial command. If it does not mean that, if it is intended only to say that the control of the fund and the duty of distribution empowers the court to recognize the rights and act upon the equities of the parties before it, then nothing new is asserted, and the question still remains, what right or equity have these petitioners upon which the court can base an authority to deliver to them a share of that which belongs to others? We have carefully considered the authorities cited under this point of the appellants. Most of them relate only to costs as such between party and party and whether to be imposed personally or upon the fund. These have no bearing upon the subject under discussion. From the opinions in others, or the language of text-books, expressions are culled to the effect that a fund in court must bear the expense of its administration; that costs in chancery depend upon conscience and the whole merits of a case; that counsel fees out of a common fund belonging to the parties to the action may be allowed, and that the power of the court over funds in its hands to award costs to be paid out of the fund has *Page 65 
often been recognized. (2 Barb. Ch. Pr. [2d ed.] 338; Eastburn
v. Kirk, 2 Johns. Ch. 317, 318; Hotaling v. Marsh, 14 Abb. Pr. 164; Campbell v. Mesier, 4 Johns. Ch. 333; Barnes v.At. Mut. L. Ins. Co., 59 How. Pr. 240; Willard's Eq. Jur. 49.) What is meant by these authorities is no more than this, that the control of the fund furnishes the opportunity and imposes the duty of recognizing every substantial equity and every existing right in making the distribution, and they leave still before us the inquiry, what right or equity in the petitioners could arm the court with power to transfer to them a portion of the fund beyond their normal share? If there is not such equity there is no such power, for the court does not sit as a bandit, dividing booty.
Have, then, the petitioners any such equity? Let us examine their position more narrowly. They were not necessary parties; they were permitted to intervene in behalf of their own personal rights; they brought no fund into court; the corporation was slain by an earlier blow and an arm stronger than theirs; they came to partake of the distribution; they assailed the amount of the receiver's commissions; they pointed out where they were in excess; they helped the court with ability and zeal in a just determination of that amount. We do not undervalue their service, or rebuke their effort. They have earned just compensation and deserve to receive it; but what we decide is that the clients who employed them should pay and not those who did not. The precise doctrine which we are asked to declare is that wherever the court has been aided in its conclusion by a party appearing, that party may have allowances out of the right of one not appearing. It assumes that the court would have gone wrong but for the good advice it got; that neither it nor the attorney-general would have raised the question; that he would not have done it at their request, they not appearing; that but for their protest the court would have over-paid its own officer; and that the parties who acted are entitled to extra pay for making the court perform its plain and obvious duty. This doctrine, once laid down, would easily draw within its range almost every case in equity *Page 66 
and work out dangerous results. We reject it. A claim for such allowances as are here sought must rest upon some recognized equitable right or there is no power to grant it. It is quite possible that there are no instances of its just exercise which do not fairly come within the principle of trustees' expenses; but we do not decide that; we cannot foresee what case may come, and choose to leave open the door for such equity and justice as may press upon us for recognition. But it must be equity and justice. We discover neither in this application, and repeat what we recently said in another case, that "we are not aware of any rule or principle whereby any of these parties are entitled to call upon others to pay counsel fees which they incur on their own behalf for the protection of their personal interests." (Savage v. Sherman, 87 N.Y. 285.)
Both parties refer to our recent decision in Attorney-Gen. v.Continental L. Ins. Co. (88 N.Y. 571). What was there decided harmonizes entirely with our present conclusions. We denied the right of the State, through an allowance to its chief law officer, or to special counsel by him employed, to share in the assets of a dissolved company. We could discover no ground of principle, no substantial equity upon which such an allowance could be defended. What was further said as to the power of the attorney-general to employ special counsel related to a retainer very broad and comprehensive. We intimated in that case, on a review of the statutes, that neither the attorney-general nor the governor, except in the cases pointed out by the statute, was authorized to employ counsel to appear for the people, so as to make their compensation a charge against the treasury; but we did not determine that the attorney-general could not depute special counsel to appear in his behalf, they making no claim against the State for compensation; nor that their right to so appear was open to question more freely than if they claimed to represent a private individual.
The order appealed from should be affirmed.
All concur, except RAPALLO, J., absent.
Order affirmed. *Page 67