JOHN P. DOUGLAS, as EXECUTOR OF HARRIET CHASE, DECEASED, RESPONDENT, v. GEORGE E. YOST AND ANOTHER, AS ADMINISTRATORS OF JAMES CHASE, JR., DECEASED, APPELLANTS, IMPLEADED WITH OTHERS, DEFENDANTS.

*Executors and administrators — the jurisdiction of the Supreme Court in an action for an accounting — an executor allowed counsel fees under the Revised Statutes — the power of the court — a former adjudication.*

The Supreme Court has jurisdiction, concurrent with the Surrogate's Court, in an action or proceeding for an accounting by executors, but will not exercise it unless it appears that complete justice cannot be done in the Surrogate's Court.

Where questions arise between the administrators and executors of different estates, involving, among other things, a question as to the power of an executor over lands, and also as to whether an annuitant has a direct lien upon certain lands, and conflicting rights grow out of such questions, the Supreme Court will assume jurisdiction of the case.

An executor who employs counsel in litigations for the benefit of his estate will be allowed the reasonable value of their services, although he has not paid their claims.

Such an allowance is made by the court, under 4 Revised Statutes ([8th ed.], p. 2564, § 58), and is entirely separate from the matter of taxable costs in a Surrogate's Court provided for by sections 2558 to 2561 of the Code of Civil Procedure.

This power of the court is a necessary one, as if it did not exist many cases would arise where neither the wills nor the estates of testators could be protected without great personal loss to their executors.

Where a surrogate's decree merely allows taxable costs, and a party asserts that the decree decided that no further costs should be allowed, the burden is upon him to show that an adjudication to that effect was actually made in the former decree.

APPEAL by the defendants, George E. Yost and Levi Chase, as administrators, etc., of James Chase, Jr., deceased, from an interlocutory judgment of the Supreme Court, entered, after a trial at the Jefferson Special Term, in the office of the clerk of the county of Jefferson on the 1st day of September, 1891, which judgment, among other things, provided, adjudged and decreed that the plaintiff was entitled to the instruction of the court, construing the last will and testament of Harriet Chase, deceased, as to what the law is in the premises, and as to his duties under the circumstances in which he and the trust fund are placed, as follows : * * *

And it was further adjudged and decreed that it was and is the duty of the plaintiff, and he is hereby directed to pay his attorneys and counsel the several sums found due them, respectively, to wit: Watson M. Rogers, $3,100; David Bearup, $1,000, and Levi H. Brown, $1,500, for the services in the complaint and findings herein mentioned, as a part of the expenses of administration, and to charge the same against the estate of said testatrix.

And it is further adjudged and decreed that plaintiff make payments in the following order:

*First.* The costs and expenses of this action as hereinafter allowed.

*Second.* The expenses of administration.

*Third.* The debts of the estate.

*Fourth.* The Jermon annuity.

*Fifth.* The administrators of James Chase, Jr., and his maternal heirs and next of kin as they are severally entitled.

*　　　*　　　*　　　*　　　*

Action was brought to obtain an adjudication as to the proper construction of the will of Harriet Chase and for a settlement of the accounts of plaintiff as executor, and for direction as to his duties in the premises.

*Thompson & Chapman*, for the appellants.

*Watson M. Rogers* and *J. Atwell, Jr.*, for the respondent.

MERWIN, J.:

The appellants claim that the Surrogate's Court of Jefferson county possesses jurisdiction and power to determine all the questions arising in this action, and that no sufficient reason is shown for bringing an equity action in the Supreme Court. It is not alleged in the answer that the plaintiffs have an adequate remedy at law. This, in some cases, has been held to be necessary. (*Ostrander* v. *Weber*, 114 N. Y., 102.)

The Supreme Court possesses jurisdiction, concurrent with the Surrogate's Court, to entertain an action or proceeding for an accounting by executors. (*Haddow* v. *Lundy*, 59 N. Y., 320; *Cass* v. *Cass*, 61 Hun, 460.) As a general rule, however, circumstances should appear indicating that complete justice cannot be done in the Surrogate's Court. (*Sanders* v. *Soutter*, 126 N. Y., 200.) It is claimed by the respondent that such circumstances do appear here.

In June, 1883, Harriet Chase died, being then the owner of real and personal property, and leaving, as her sole heir and next of kin, her son James Chase, Jr., who was then a minor and an imbecile. She left a will, in which she directed her executor to pay to her son for his benefit so much, if any, as she was legally bound to pay on account of her administration of the estate of his father, and on account of moneys received by her for the use and occupation of lands which descended to the son from his father, deducting so much as was just and proper for the maintenance of the son, and excluding her right of dower and her distributive share in the estate of her husband; She directed that "the sums to be paid by this provision may be paid out of my personal or real estate, or both, as my executor may elect." Then, after giving legacies to the amount of $2,000, she gave to her two sisters an annuity of $500 each during their respective lives, with the provision that her executor might in his discretion suspend such annual payment or reduce the amount to $300 annually if he deemed it best and proper for the benefit of her estate. She named two parties who should have the power to superintend the care of the person of her son during his life, with the right to designate the place of his residence and the persons who should have the immediate charge of him, and might if they deemed it necessary purchase a residence for that purpose, and she directed her executor to pay to them, from her estate, real and personal, and the rents and profits thereof, such sums as may be reasonably necessary for the maintenance of the son over and above what he may have from his own estate, and also such sums as they may fairly expend for the purposes named, as well as a reasonable compensation for their own services. She named the plaintiff as the executor, and authorized and directed him "to lease and rent any and all of my real estate after my death for such terms and on such times as he may deem best." There was a codicil, but its contents do not appear.

On the 23d of June, 1883, the plaintiff presented to the Surrogate's Court a petition for the probate of the will. Objections to the probate were thereafter filed on behalf of the son and a contest was had in the Surrogate's Court. Pending this, and on the 3d of September, 1883, John D. Ellis was appointed temporary administrator of the estate of Harriet Chase, deceased, and on the 21st of June,

1884, a committee was appointed by the Supreme Court of the person and estate of the son. On the 28th of November, 1884, a decree was made by the surrogate refusing probate to both said will and codicil, and in connection with this the surrogate passed upon and allowed the plaintiff the full bill of costs and disbursements provided by statute, being the sum of $904.72, of which $420 were costs and $484.72 were disbursements, and the same were accepted by the plaintiff. Thereafter the plaintiff appealed to the General Term, and in July, 1886, a decision was rendered (41 Hun, 203) reversing the decree and directing a new trial before a jury. A new trial was had, which resulted in a verdict sustaining the will and rejecting the codicil. In pursuance of this verdict and on the 3d of February, 1887, a decree was entered in the Surrogate's Court admitting the will to probate and granting letters testamentary to plaintiff, who thereupon qualified and entered upon the discharge of his duties. In this decree there was adjudged to the plaintiff, for costs and disbursements accruing and incurred by plaintiff, as proponent of said will and codicil, subsequent to the prior decree, the sum of $1,435.70, of which $285 were costs and $1,150.70 were disbursements. These sums were paid to the plaintiff or his counsel.

After plaintiff's qualification as executor, Ellis, the temporary administrator, rendered an account of his proceedings. Over this, there was a contest and the same was finally settled by decree of the Surrogate's Court on March 31, 1888. On the 10th of April, 1888, the plaintiff received from Ellis the personal estate amounting to $22,748.86. Ellis also surrendered to the plaintiff the real estate of the testatrix, consisting of three farms, and the plaintiff has since then received the rents and profits.

On the 22d of December, 1890, James Chase, Jr., died and the appellants Yost and Chase were on the 29th of December, 1890, appointed administrators of his estate. In September, 1884, Fred Waddingham was appointed, by the surrogate of Jefferson county, administrator *de bonis non* of the estate of James Chase, senior, in place and stead of Harriet Chase, deceased. In December, 1888, plaintiff had a settlement with such administrator concerning the indebtedness of Harriet Chase to that estate by reason of her administration thereof, in which settlement it was found that $7,927.04 was the amount of such indebtedness, and this was duly

approved by the Surrogate's Court, and the plaintiff authorized by that court to pay the same to such administrator. About the same time there was a settlement between plaintiff and Waddingham as committee of the estate of James Chase, Jr., by which it was found that the indebtedness from Harriet Chase to her son at the time of her death, by reason of her use and occupation of the real estate of her son, was the sum of $2,179,59. This settlement was affirmed by both the Supreme Court and the Surrogate's Court, and the plaintiff authorized to pay the same to the said committee. Of the sums so found due there is still unpaid about $1,000.

It was found by the Special Term, upon sufficient evidence, that the defendant Yost, administrator, etc., and some of the paternal heirs of James Chase, Jr., claimed that the settlement and adjustment of the indebtedness of Harriet Chase with said Waddingham was illegal and void for want of notice of the same to the paternal heirs, and that such settlement would not be acquiesced in nor binding upon them.

It was also found that upon the trial it was claimed by some of the maternal heirs of James Chase, Jr., that the provisions of the will authorizing the renting of the real estate by the executor were void, and that the rents received by him were real estate, and should be paid to the maternal heirs to the exclusion of the administrators of the estate of James Chase, Jr., and his paternal heirs, and that it was the duty of Waddingham, upon his appointment as committee, to have taken possession of the real estate of the testatrix, and received the rents and profits down to the time of the death of said James; that it was claimed by the administrators of James Chase, Jr., that the rents and profits received by plaintiff were personal estate, and that they were entitled to receive the same as such; that Waddingham claimed he had no right to take possession of such real estate, or receive the rents and profits. The appellants' counsel claims that there is no proof to sustain these findings. No exception is taken to them. The answers of the defendants, the maternal heirs, and of Waddingham are not printed in the appeal book. The complaint is broad enough to cover all these questions. It is quite apparent from the pleadings that are printed, and from the requests of the appellants, that a question was made as to the validity or extent of the power of the plaintiff over the real estate. There was

also apparently a question whether the surviving annuitant had directly a lien on the real estate, or indirectly a lien through the exercise by the plaintiff of the election given him in the first clause of the will, whereby the debts there referred to would be payable from the real estate, thereby increasing the amount of the personal estate applicable to the payment of the annuity.

It further appears that the plaintiff, in the litigation concerning the probate of the will, employed counsel whose services were reasonably worth several thousand dollars over and above the sums awarded as costs in the decrees of the Surrogate's Court. It is found, upon sufficient evidence, that such employment by the executor was necessary, and was made in good faith and for the benefit and protection of the estate. There is no dispute in the evidence as to the value of the services. After such services were rendered and the will admitted to probate and letters testamentary issued to plaintiff, the surrogate informed the plaintiff that counsel fees on account of said probate proceedings could not be lawfully paid by him on account of said estate, and that no allowance could be made on the settlement of plaintiff's accounts, as executor, for payment of such services, whatever their value, unless it should be first determined by the Supreme Court that the same are authorized by law and can be allowed to an executor on its final accounting.

Having in view the character of the will in question, the proceedings by plaintiff thereunder in the administration of the estate and the diverse interests likely to exist, as well as claims made, and the situation of the plaintiff himself as to expenses incurred by him in the line of his duty as executor, we are inclined to the opinion that sufficient reason is presented for bringing the action in the Supreme Court. The maternal heirs of James Chase, Jr., the committee, Waddingham, and the attorneys who claim counsel fees, were all parties defendant in the action, and seem to have answered in the case. None of those parties, however, are made parties upon this appeal.

The main question raised by the appellants here upon the merits relates to the counsel fees, and we may as well come directly to that subject. In doing so, we assume that the appellants can raise the question whether the plaintiff has a right to be reimbursed for the expenses of counsel, although such counsel have not been brought

in upon this appeal. If the plaintiff deemed it important that they should be parties here, it was probably his duty to have moved for an order requiring the appellants to bring them in, and in that way perfect their appeal. This was the practice followed by this court in *Hubbell* v. *Syracuse Iron Works*, decided by this court in April, 1890, and affirmed by the Court of Appeals in 121 New York, 716.

The Special Term, after finding the amounts due the respective counsel as the fair and reasonable value of their services, and that the employment of such counsel by the executor was necessary and in good faith and for the benefit and protection of the estate, decided as matter of law that it was the duty of plaintiff to pay the respective counsel the sums found, as a part of the expenses of administration, and to charge the same against the estate. An accounting was directed before a referee in which the executor would be credited with payments so made.

It is suggested by the appellants that the court had no right to pass upon the propriety of such payments before they were actually made by the executor. The appellants had full opportunity to be heard, both as to the right and the amount, and it is difficult to see how the rights of the appellants have been injured or impaired by the determination of the question before actual payment. The judgment does not provide for any credit to the executor for such charges before actual payment, and in that respect is not within the rule laid down in *Matter of Bailey* (47 Hun, 477), and kindred cases. As said by FINCH, J., in an analogous case (*Matter of Atty.-Genl.* v. *North Am. Life Ins. Co.*, 91 N. Y., 61), they are none the less the necessary expenses of his trust because fixed in advance of actual payment. In *Gilman* v. *Gilman* (6 T. & C., 211; affirmed in 63 N. Y., 41), counsel fees seemed to have been allowed before payment.

We then come to the question whether the plaintiff is entitled to be indemnified from the estate for expenses necessarily and in good faith incurred in obtaining the probate of the will. The claim of the appellants is that the plaintiff can obtain for such expenses nothing beyond the costs awarded to him in the decrees of the Surrogate's Court made in November, 1884, upon refusing probate of the will, and in February, 1887, upon admitting the will to pro-

bate. The costs allowed in those decrees were those permitted by sections 2558 to 2561 of the Code, and may properly be called the taxable costs of the proceedings, and were apparently paid by the temporary administrator while the estate was in his hands. They are not, as between the attorney and the client, the measure of the value of the services of the attorney. (*Gallup* v. *Perue*, 10 Hun, 525.) The statute, 4 Revised Statutes ([8th ed.], 2564, § 58), with reference to the settlement of accounts of executors provides that "in all cases such allowance shall be made for their actual and neces- sary expenses as shall appear just and reasonable." This would include expenses, of the character stated, incurred in the employ- ment of legal counsel on the application for probate. (Redf. Sur. Pr. [2d ed.], 458 ; 1 Williams Exrs. [6th Am. ed.], 442, note *y ; Young* v. *Young*, 8 Gill., 285.) It was the right of the executor, and ordinarily his duty, to present the will for probate. (1 Williams Exrs., 355.) So that his reasonable expenses in that regard would be incurred in the discharge of the duties of his trust. His right would be deemed as accruing at the date of the death. (1 Williams Exrs., 696.)

It has been held by the Court of Appeals that the Supreme Court has power to make allowances to trustees and others acting in a fiduciary capacity for all expenses necessarily incurred in the faithful performance of their duties, including counsel fees, and that the power to do this is independent of the statutory provisions relating to costs. (*Wetmore* v. *Parker*, 52 N. Y., 466, referring to *Down- ing* v. *Marshall*, 37 N. Y., 380.) This is applicable to executors, and the existence of the principle seems to be conceded in *Matter of Application of Holden*, (126 N. Y., 593 ; see, also, *Woodruff* v. *N. Y., L. E. and W. R. R. Co.*, 41 N. Y. St. Rep., 193). There is nothing in the provision of the Code as to the costs in probate cases that interferes with this principle. There is no good reason presented for inferring an intent to so interfere. Did not such a rule exist there would be many cases where the wills of testators, as well as their estates, could not be fairly protected without great personal loss to the executors. A testator in naming an executor gives him an implied authority and direction to do all he reasonably can to prove and carry out the will, and this carries with it the right to charge the estate with the reasonable expense. We see no good

reason in the present case why the plaintiff should not be indemnified. It is not necessary here to consider the effect of the provisions of section 2562 of the. Code, as that does not refer to counsel fees in a case like the present.

But it is said that the Surrogate's Court, in its decrees as to costs, adjudicated that the costs then allowed were all that the plaintiff was entitled to receive for expenses of counsel in those proceedings. There was no adjudication in terms to that effect, nor is that the fair inference from those decrees. The taxable costs were allowed. The question of what the plaintiff had incurred for counsel fees, or should be allowed, was not then before the court. The parties were not there who had a right to be heard on the question. In *Unglish* v. *Marvin* (128 N. Y., 380) it is said that a party relying upon a former adjudication as a bar must show that the point involved was decided in the former suit. We fail to find here any former adjudication that affects the question.

No other questions are presented that call for particular consideration. No fault is found with the form of the decree.

It follows that the judgment should be affirmed.

Hardin, P. J., and Martin, J., concurred.

Judgment affirmed, with costs.