(5 Misc. Rep. 136.)

## In re O'BRIEN'S ESTATE.

## In re McCARTHY et al.

(Surrogate's Court, Rensselaer County. September, 1893.)

1. EXECUTORS—ACCOUNTING—ALLOWANCE FOR ATTORNEY'S FEES.

A claim of an attorney for services rendered to an executor is not a claim against the estate, but against the executor personally; and an allowance therefor cannot be made on a settlement of the executor's accounts, unless there has been an actual payment by the executor to the attorney, so that it may be considered as a disbursement. Douglas v. Yost, 18 N. Y. Supp. 830, 64 Hun, 155, distinguished.

2. SAME—PROCEEDING TO REQUIRE NEW BOND.

Where an application to compel executors to give additional security is granted after a contest by the executors, and the surrogate finds that, as the costs and expenses of the proceeding were the result of the unwillingness of the executors to give a bond, they should personally pay the disbursements, they will not afterwards, on a settlement of their accounts, be allowed for payments to their attorney for services in such proceeding.

8. SAME—EXPENSES INCURRED WHILE ENJOINED FROM ACTING.

Executors will not, on a settlement of their accounts, be allowed for services of their attorney in the management of the estate while they were enjoined from transacting the business of the estate.

Judicial settlement of the accounts of Charles McCarthy and Thomas O'Brien, as executors of the will of William F. O'Brien, deceased. Ellen O'Brien, a legatee, filed objections to certain items. A referee was appointed to hear the testimony, and report the same to the surrogate's court, with his opinion. Ellen O'Brien excepts to his report.

For report of decision on application to revoke letters testamentary, see 19 N. Y. Supp. 541.

Wm. J. Ludden and L. E. Griffith, for executors

John C. Norton, for contestant.

LANSING, S. I do not deem it necessary, in a reference of this character, (to take testimony and report,) to pass anew upon the numerous requests to find presented to the referee, and passed upon by him. It appears to be the duty of the surrogate to make new or independent findings of law and fact as the basis of his decree, and to pass upon the exceptions only to the report filed, except that, in case of an appeal, he must, upon the settlement of the case, make such further findings as may be required to present the questions intended to be reviewed. Code, § 2545; Angevine v. Jackson, 103 N. Y. 470, 9 N. E. Rep. 56; In re Moulton, (Sup.) 10 N. Y. Supp. 717; In re Keef, 43 Hun, 98.

The first and fourth exceptions raise the question of the value of the services rendered by the attorneys of the executors in the various proceedings in which they were alleged to be engaged for them. For the purpose of this examination, I shall assume that the items of the claim for the attorneys' services were satisfactorily proven upon the hearing, although it must not be assumed thereby that I assent to the proposition that a judge or referee, who is an attorney, and has taken testimony fully describing the legal services

rendered, is bound by the opinion of attorneys called as witnesses, as to their value, although there is no countervailing proof. Of course, such evidence is always competent, usually valuable and persuasive, but is never so far conclusive as to take the place of the independent judgment of the trial court, whose duty it is, having heard the evidence describing the services rendered, to pass upon the question of value for himself.

The second and fifth exceptions to the conclusions of law of said referee, together with the refusal of the referee to find upon certain questions of law and fact in connection therewith, raise one of the important questions in this case, namely, has the surrogate, upon the judicial settlement of their accounts, the jurisdiction or power to allow executors or administrators to credit themselves in their account with items of alleged expenses of administration which have not, in fact, been paid by them? The authority of the surrogate to reimburse executors or administrators for counsel fees paid for services rendered them in the course of their administration is derived from 2 Rev. St. p. 93, § 58, as amended, (Laws 1863, c. 362, § 8,) which is now incorporated by a recent amendment (Laws 1893, c. 686) in section 2730 of the Code, which provides as follows: "In all cases (upon settlement of executors and administrators' accounts) such allowance must be made for their actual and necessary expenses, as appears just and reasonable." St. John v. McKee, 2 Dem. Sur. 236; Seaman v. Whitehead, 78 N. Y. 306. The very language of the statute, namely, that allowances must be made for actual expenses, would seem to imply that it was only disbursements actually made, and not a liability incurred, for which executors could receive credit upon the judicial settlement of their accounts; but, passing this for the present, let us consider the nature of the items in dispute. They are claims for services by attorneys. It is well settled that executors who employ attorneys in respect to the affairs of their estate are personally liable for such services, and cannot be made liable in their representative capacity. Claims for such services, therefore, are not claims against the estate, but claims against the executors, personally. Willcox v. Smith, 26 Barb. 328; Ferrin v. Myrick, 41 N. Y. 315; Mygatt v. Willcox, 1 Lans. 55. The question for the surrogate's consideration, therefore, is not that of a just compensation, as between attorney and client, but of necessary disbursement, as between the executor and the next of kin, for the personal representatives may employ an attorney to perform services for the estate which the law devolved upon him. Such services would not, therefore, constitute a proper claim in favor of the personal representatives against the estate, although contracted in good faith, and actually paid. In re Collyer, (Surr.) 9 N. Y. Supp. 297. This rule is important upon the question of the jurisdiction of the surrogate. The surrogate can only exercise such jurisdiction as has been expressly conferred by statute, together with such incidental powers as may be requisite to effectually carry out the jurisdiction actually granted. In re Underhill, 117 N. Y. 471, 22 N. E. Rep. 1120; Riggs v. Cragg, 89 N. Y. 489. A judicial settlement of an executor's account is strictly a statutory proceed-

ing, at least so far as relates to the jurisdiction of the surrogate, and by its terms only those (and they are specifically named as "heirs at law," "next of kin," "creditors," etc.) who are interested in such accounting are cited, and they are cited because of such interest; and those, only, has the surrogate the power to bind by his decree. In re Underhill, 117 N. Y. 471, 22 N. E. Rep. 1120. It is clear, therefore, that the surrogate has no jurisdiction of either the subject-matter or the person of those having claims against executors or administrators personally, since such persons are not, and cannot be made, parties to the proceedings, and, having no claims against or interest in the estate of the deceased, the surrogate has no jurisdiction over the subject-matter of their claim. It follows, therefore, that, upon an accounting or judicial settlement, it is only where the executor or administrator has actually paid such claim, and so changed its character into that of a disbursement for the benefit of the estate, that he may embrace it in his account, and thus bring it within the jurisdiction of the surrogate, where the justness and propriety of the "expense" may be challenged by those interested.

But there is another consideration of very great importance upon this question. The statute definitely prescribes the form and subject of the account, and its mode of verification. It also requires that every payment shall be evidenced by a voucher, and prescribes the mode of proof where vouchers have been lost or destroyed. Very great importance, it will be seen, is attached to the production of a voucher. The statute says, "The accounting party must produce and file a voucher for every payment, except," etc. Code, § 2729, amended 1893, chapter 686. Indeed, there are several cases holding that an executor cannot be allowed, even for a payment actually made, where he is unable to supply the voucher, or the statutory proof, in case of its loss. In re Gerow's Estate, (Surr.) 23 N. Y. Supp. 848, and cases cited. So strict has the rule been held, that where vouchers had been destroyed by fire, and the administrators were unable to supply the statutory proof upon the final settlement, a special act was once passed by the legislature, authorizing the surrogate to allow the accounts of said administrators without vouchers. Willcox v. Smith, 26 Barb. 342. It would seem, therefore, that the very fact that the Code requires each credit to be evidenced by a voucher is a most conclusive reason in support of the position that only an actual payment can be treated as a credit in the executors' account. The rule would seem to be that every credit must be evidenced by a voucher, and since, in the absence of payment there can be no voucher, therefore, payment is necessary to the allowance of the claim. But there must be a voucher in fact, as well as in name. Evidence of a formal voucher is not sufficient. It is well settled a voucher may be impeached on the accounting. "It may be shown, for instance, that the amount it represents was not due to him who executed it, that it has not, in fact, been paid; in short, that the credit is unsupported by voucher. In such event, the claim cannot be allowed." In re Lloyd, (Surr.) 16 N. Y. Supp. 103; Dayt. Surr. 512; Metzger v. Metzger, 1 Bradf. Surr. 265; Clock v. Chadeagne, 10 Hun, 97; Swenarton v. Hancock, 22 Hun, 43. But

this is not a matter of reasoning and construction, alone.    There is an unbroken current of authorities in the surrogate's court in support of the proposition; and it has been absolutely held in several cases in the supreme court, upon appeal from decision of the surrogate's court, that "in no event can an allowance be made by the surrogate for a claim presented by an executor for charges of counsel fees incurred in respect to the business of the estate until the executor has actually paid his counsel, and applied for reimbursement."    In re Bailey, 47 Hun, 477; Clock v. Chadeagne, 10 Hun, 100; Gilman v. Gilman, 2 Lans. 7; Heather's Estate, 15 Abb. N. C. 197; Shields v. Sullivan, 3 Dem. Surr. 296; In re Casey's Estate, (Sup.) 6 N. Y. Supp. 608; In re Collyer's Estate, (Surr.) 9 N. Y. Supp. 300; In re Lloyd, (Surr.) 16 N. Y. Supp. 103; In re Cohn, 5 Dem. Surr. 338.    The argument upon this point might well rest here.    But several cases were cited by the counsel for the executors,—among them, Douglas v. Yost, 64 Hun, 155, 18 N. Y. Supp. 830, holding, in an action brought in the supreme court for the "construction of a will, for the settlement of the account of an executor, and for direction as to his duties in the premises," that an executor who had employed attorneys in litigations for the benefit of the estate might be allowed the reasonable value of their services, although he had not paid their claims; and the court cited in support of the position Attorney General v. Insurance Co., 91 N. Y. 61; Gilman v. Gilman, 6 Thomp. & C. 211; Id., 63 N. Y. 41.    It must be remembered that this power is claimed and exercised by a court having general and original jurisdiction, both in law and equity, where all the parties may be brought before it, including the attorneys having claims.    The case proceeds upon the doctrine that the supreme court "has power to make allowances to trustees, and others acting in a fiduciary capacity, for all expenses necessarily incurred in the faithful performance of their duties, including counsel fees, and that the power to do this is independent of the statutory provision relating to costs," citing in support of the doctrine Wetmore v. Parker, 52 N. Y. 456; Downing v. Marshall, 37 N. Y. 388.    But the court especially disclaim any intention to lay down a rule "in conflict with the rule laid down in Re Bailey, 47 Hun, 477, and kindred cases," in respect to practice and jurisdiction of the surrogates' courts, and states "that the judgment [in supreme court] does not provide any credit to the executor for such charges before actual payment."    Attorney General v. Insurance Co., 91 N. Y. 61, was also a case in the supreme court,—a court of ample jurisdiction both of the subject-matter and of the parties.    Indeed, it seems to me the distinction between the rule to be applied in the supreme court, as a court of equity, and in the surrogate's court, is that in the supreme court necessary expenses incurred by a trustee for the protection and preservation of the fund by litigations are treated as a quasi lien or charge upon the fund, and therefore, whether paid or not, the existence of the lien, and its extent, may, in a proper suit, when all the parties are before the court, be determined as well before payment as afterwards.    But, whatever may be the reason for the rule in the supreme court, the rule is otherwise in the surrogate's court.    There,

as we have seen, a judicial settlement is a statutory proceeding; and the statute holds the personal representative responsible for the care of the estate, authorizing him to use all proper means for its protection and preservation, and, when an actual expense has been incurred and paid, permits, in a proper case, upon the settlement of his accounts, his reimbursement from the funds of the estate. The case of Gilman v. Gilman, 2 Lans. 7, arose in the surrogate's court. But the point under consideration here, namely, whether the court had the authority to make an allowance before actual payment, does not appear to have been raised. The sole question, as appears by reference to the case at the general term and court of appeals, was as to the power of the surrogate to make an allowance for services and advice of counsel for the necessary management of the estate. The court, at general term, refer to Dayton on Surrogates, (3d Ed. 540--542,) and cases there cited, as the sole ground for their decision. Upon reference to that work, it will be seen the learned author discusses in those pages the power of the court to allow compensation for expenditures incurred in the course of administration, but nowhere discusses the question here presented. But the allowance made in that case was not upon the statutory final settlement of an executor's account, and so is not an authority in point. We are quite sure that there is not in the cases cited, not is there in any other case which we have been able to discover, an adjudication in support of the position that, in the surrogate's court, payment for services of counsel, or other "administration expenses," can be allowed to personal representatives upon the judicial settlement of their accounts, before actual payment. The exceptions must therefore be sustained. This requires the disallowance of all of the several items of the bill, except the sum of $200 actually paid by the executors before filing their account.

There is another question raised by the exceptions and requests to find, which is directly involved in the settlement of this account. This requires a brief statement of facts for its elucidation. Shortly after the proof of the will, and qualification of the executors herein, an application was made by the legatees for the removal of the executors upon the ground, among others, that their circumstances were such that they did not afford adequate security to the creditors or persons interested for the due administration of the estate. Code, § 2685, subd. 5. Sections 2686 and 2687 provide that in such case, if the executors give a bond as therein provided, the surrogate may dismiss the proceedings, and allow the letters to remain unrevoked. The executors filed answer to the application, contesting the allegation as to their responsibility, and declined to give their bond. The matter was sent to a referee, who found, in substance, that the circumstances of the executors were such as not to afford adequate security to the persons interested, for the due administration of the estate. The surrogate thereupon directed that a bond in the penal sum of $30,000 should be filed, and in his decision added "that, as the costs and expenses of this proceeding have been largely the result of the unwillingness of the executors to furnish a bond, as they were authorized to do under

section 2686 of the Code, upon the presentation of the petition, they should personally pay the disbursements on this proceeding, amounting to the sum of $101.40," and in case of failure to give such bonds, and to pay the disbursements, directed their removal.[1]　An order was subsequently made and entered by the surrogate, charging the disbursements of the reference "upon the executors, personally, as costs of the proceedings."　The executors now present a bill for $312 and $175 for services of their attorneys before the referee upon said reference.　The question presented upon these facts is, are the executors entitled to recover for the services of their attorneys on the reference above mentioned, upon the assumption that the payment of $200 actually made may be treated as a partial payment thereof?　The import of the order, certainly, was that the executors had unnecessarily and unreasonably refused to give bonds, which resulted in the litigation, with the costs of which the surrogate held they should be personally charged. It seems to me that the order made in the former proceeding is substantially res adjudicata in this case.　The substance of the order was that the executors had been wrong in their contention, and that as it was a personal matter, relating substantially to their personal qualifications to hold their office, they should personally pay the expenses of the litigation of the issue raised by them, and decided against them; and it would seem that to now permit the executors to impose upon the estate a charge for the services of their counsel in that contest would be in substantial conflict with the former order, which imposed the costs of the reference upon them.　This question was before the court in Hosack v. Rogers, 9 Paige, 461, where it was held that "where an executor unsuccessfully resists an application to the surrogate to compel him to give security and to account, if the surrogate does not allow him the costs of opposing such application, he cannot be allowed his costs against the estate of his testator."　And the court, in its opinion, says, "the surrogate having decided that the executor was wrong in his objections to the jurisdiction of the surrogate to call him to an account," and he not having been allowed costs before the surrogate, and the costs of the appeal having been charged against him, personally, upon the ground that he was wrong in objecting to the jurisdiction of the surrogate calling him to account, the master was wrong in charging the estate with costs of his unsuccessful resistance of a legal right.　In case of Gilman v. Gilman, 2 Lans. 7, it was held that "the executors were not entitled to charge the estate with the expenses of their unsuccessful resistance to an application for an order requiring them to account, nor of their defense in proceedings for contempt for neglecting to account."　These cases all proceed upon the ground that the expense incurred was not an "administration expense," but an expense of the executor or administrator personally, and therefore could not rightfully be imposed upon the estate.　It follows, therefore, that authority, as well as reason, requires the rejection of

[1] See 19 N. Y. Supp. 541.

the claim of the personal representative for such services. The only case cited by the attorney for the executors in support of the contrary view is In re Jones, 24 Wkly. Dig. 333. It may be remarked that the case is not found in any of the authorized reports. It appears by reference to that case, and to the case In re West, Id. 283, that the grant of letters of administration to Mrs. Jones was revoked by the surrogate on the ground that the same were "obtained by a false suggestion of material facts," and, "by reason of misconduct in the execution of her office, she has become unfit for the due execution of the office." After removal, she filed her account, which showed, among other things, that she had paid to her attorney the sum of $804.05 for legal services in her behalf. It does not appear, directly, that such services were rendered in resisting the application for removal; but Judge Boardman, a member of the court,—who states, "With some hesitation, I concur,"—says that the "expenses incurred and allowed were not in the interest of the estate, but of Mrs. Jones personally. Still, as she was administratrix, the expenses of a contest to prevent her removal were perhaps legitimately chargeable to the estate." It will be observed, in examining the opinion, that the majority of the court base their decision affirming the order of the surrogate making the allowance upon the technical ground that it was not specifically found, "in the case now before us, that the administratrix was guilty of bad faith." But we do not understand that every expenditure of money made by an executor or administrator in good faith, whether in the interest of the estate or himself, personally, is to be allowed him on his accounting. The statute says that such "actual and necessary expenses shall be allowed him as shall appear just and reasonable." Section 2730, supra. But we do not regard this case as an authority for the doctrine that where an executor has been guilty of misconduct in the execution of his office, and has been removed therefrom upon that ground, he can charge the costs of his unsuccessful defense upon the estate, since that question, according to the opinion of a majority of the court, was not in the case. But if the case, in any possible view, can be deemed an authority for such a proposition, it is so directly in conflict with right reason, and with the established principles of equity applicable to the relation of trusts and trustees, that I should unhesitatingly decline to follow it, especially in view of the fact that there are other decisions in the same court, and in the court of appeals, holding, in unmistakable terms, that only those expenses of counsel incurred in the interest of the estate, and not of the executor, personally, should be paid by the estate. In re McGillivray, 138 N. Y. 313, 33 N. E. Rep. 1077, is a case very much in point. That case holds that, where an executor had been engaged in unsuccessful legal contentions in respect to his official duty, the bare fact that he paid out of the fund the charges of his counsel for his services in those matters, though he at the time exacted a stipulation that, if disallowed upon the accounting, the amount should be repaid him, was a breach of duty, and that such payment was a diversion of the funds to an improper purpose,

and was such misconduct as would justify the removal of the executor from his office. I am therefore of the opinion that no allowance can be made for the expenses incurred by the executors in unsuccessfully resisting the charge that. their circumstances were such that they did not afford adequate security to the persons interested for the due administration of the estate.

Another question is raised by the requests and refusal to find, which is whether the executors should be allowed for advice and service of counsel during the period which the executors were enjoined from acting as such, or in any manner interfering with the administration of the estate. I am of the opinion that they should have the aid of counsel in advising them in regard to the effect of the order made by the surrogate, and their duties under it, but that any charges for services rendered the executors in the management of the estate, or the conduct of its business, while they were enjoined from transacting any business for the estate, should not be allowed, since the charges were not for services to said executors, to enable them to perform any acts or duties as executors of this estate. Besides, from an examination of the items of the bill, the advice and services appear to have been rendered with reference to said reference, a claim for services in attending which has been disallowed.

This disposes, substantially, of all the questions that have been raised by the exceptions. But it remains for me to say that this is quite an important estate; the executors were inexperienced in the management of trusts; their duties were delicate, and somewhat complicated; the relations between them and the beneficiaries or legatees were not friendly; and it was proper they should have counsel to advise with them in regard to the conduct of the estate, and the amount of the counsel fee and charges should be governed by the character and amount of the estate, and the business to be necessarily transacted by them. This does not interfere with the well-settled rule that the executors must perform, personally, the ordinary duties devolving upon trustees, and that the estate cannot be charged for the performance of such services by agents or attorneys, though the services were faithfully rendered, and payment has been made therefor. I think the executors should be allowed the sum of $100 for counsel fee paid in the management of the estate. I am further of the opinion that for the services rendered in the matter of the petition by the next of kin for the removal of the executors, they should have a reasonable counsel fee for the examination of the charges and attendance before the surrogate in connection therewith, until they made their answer, and a reference was ordered. For such services, I shall allow them the sum of $50, and a further allowance of $50 is made for the services of counsel in the proceedings taken by the executors for reducing to their possession the property of the estate. As this amount covers the amount actually paid, the surrogate has no jurisdiction to make any further allowance. I think, under the circumstances of this case, the executors should be allowed their disbursements upon the reference herein, and costs as upon an un-

contested application for settling their accounts, viz. $25, and the usual per diem allowance for the preparation of the account,—say 3 days, $30; hearing, 1 day, $10. The contestants must be allowed costs of a contested case, $70, and $10 for every hearing,—5 days, $50. A statement of facts may be prepared, and a decree drawn in accordance with this opinion. Decree accordingly.